### In re WEST CARIBBEAN CREW MEMBERS.

Case No. 07–22015–CIV.

United States District Court, S.D. Florida.

May 14, 2009.

Stephen Frederick Rosenthal, Podhurst Orseck Josefsberg Et Al, John Gravante, III, Podhurst Orseck, P.A., Edward Montoya, Montoya Law Firm PA, Miami, FL, for Fredy A. Estrada Holguin.

Aaron Samuel Podhurst, Podhurst Orseck Josefsberg Et Al, Alexander Rundlet, Victor Manuel Diaz, Jr., Podhurst Orseck, P.A., Miami, FL, for Fredy A. Estrada Holguin, Carlos Jerez Bohorquez, Erika Betran Cifuentes, Carlos Pena Marin, Nubia Valencia De Pena, Gloria Patricia Tabares Velez, Elkin Mauricio Munoz Jaramillo, Elkin Perez, Ingri Johany Buendia Munoz.

Edward A. Moss, Heather Cohen Szkaradek, Humberto H. Ocariz, Shook Hardy & Bacon LLP, Miami, FL, V.L. Woolston, Perkins Coie, Seattle, WA, for Boeing Company.

Christopher David Brown, Cozen O'Connor, Miami, FL, for Pratt & Whitney Engine Services, Inc., Pratt & Whitney Canada Corporation.

James Nial Robinson, II, Rudolph F. Aragon, White & Case, Miami, FL, Charles L. Kerr, Ryan W. Borho, Morrison & Foerster, New York, NY, for Honeywell International Inc.

Joseph Thompson Thornton, Beverly Dawn Eisenstadt, Patricia Ann Leid, Thornton Davis & Fein, PA, Miami, FL, for Continental Airlines, Inc., Newvac Corporation.

Richard Michael Dunn, Cozen O'Connor, Miami, FL.

Anaysa Gallardo, Cozen O'Connor, Miami, FL, for United Technologies Corporation.

Lyndall Molthan Lambert, Holland & Knight, Miami, FL, for Pacific Harbor Capital, Inc.

### *ORDER DENYING DEFENDANTS' MOTIONS TO DISMISS ON THE GROUNDS OF FORUM NON CONVENIENS*

URSULA UNGARO, District Judge.

THIS CAUSE is before the court on the following motions filed by Defendants:

MK MK Aviation U.S.A. Inc.'s (MK Aviation) and MK Leasing's USA Ltd.'s (MK Leasing) Motions to Dismiss on the Grounds of *Forum Non Conveniens* (D.E. 160, 178); the Boeing Company's ("Boeing") Motion to Dismiss on the Grounds of *Forum Non Conveniens,* (D.E. 245); Honeywell International Inc.'s ("Honeywell") Motion to Dismiss on the Grounds of *Forum Non Conveniens* in favor of Colombia and joinder in The Boeing Company's and MK Leasing Inc.'s motions (D.E. 244); Pratt & Whitney Canada Corporation's, United Technologies Corporation's, and Pratt & Whitney Engine Services, Inc.'s Motion to Dismiss on the Grounds of *Forum Non Conveniens* in favor of Colombia and joinder of Boeing's and MK Leasing's arguments in support of their respective motions to dismiss in favor of Colombia (D.E. 250); Defendants Newvac Corporation Inc. ("Newvac") and Continental Airlines Inc. ("Continental") and Pacific Harbor Capital Inc. ("PHC") adopted Boeing and Honeywell's motions to dismiss. (*See* D.E. 247, 249, 300.) The court shall refer to all Defendants as "Defendants." Plaintiffs filed one collective response to Defendants' motions. (D.E. 291.) Defendants filed replies to Plaintiffs' response. (*See* D.E. 294, 295, 296, 304.) The court has considered the motions and is otherwise fully informed in the premises.

## *BACKGROUND* [1]

On August 16, 2005, an MD–82 aircraft designated West Caribbean Airways ("WCA") Flight 708, departed from Panama City, Panama for Fort de France, Martinique. While in flight, the aircraft lost speed and ultimately crashed in a swamp near Machiques, Venezuela. Alt passengers and crew members were killed. Plaintiffs are nine representatives of the eight deceased Colombian crew members who worked aboard the aircraft. All of the named Defendants are U.S. based corporations [2] who at some time prior to the crash were allegedly responsible for the maintenance, repair and airworthiness of the aircraft and/or its engine parts.

Although the crash took place in a foreign territory, Plaintiffs' product liability claims primarily arise from the manufacture, maintenance and repair of the subject aircraft and its engine parts over a nineteen year period in the United States. The aircraft's chain of custody dates back to at least November 4, 1986, when Continental leased it as a commercial airliner pursuant to a series of agreements executed with Boeing and PHC. (Am. Compl. ¶ 32.) The lease, by its terms, was to expire on January 2005. (Am. Compl. ¶ 32.)

Continental operated the aircraft as a commercial airliner within the United States until 2001. (Am. Compl. ¶ 34, 35.) Between the years 1986 and 2001, more than 22 Service Difficulty Reports were issued regarding the subject aircraft (Am. Compl. ¶ 36.) The Service Difficulty Reports addressed problems with, among other parts, the tail cone and right engine. (*Id.*) Additionally, the aircraft was equipped with JT8D Pratt & Whitney en-

---

1. The facts recited herein are taken from the Consolidated Third Amended Complaint ("Am. Compl.").

2. The place of incorporation of the Defendants is as follows; Boeing, Pratt Engine, Honeywell, and PHC are Delaware corporations (Am. Compl. ¶¶ 11, 16, 20, 22); United Technologies is a Connecticut corporation (Am. Compl. ¶ 13); Pratt Canada is a Canadian Corporation (Am. Compl. ¶ 19); Continental and MK Aviation are Nevada corporations; (Am. Compl. ¶¶ 24, 28); Newvac is a Florida corporation (Am. Compl. ¶ 26.); and MK Leasing was a Texas Corporation (Am. Compl. ¶ 29). Plaintiffs allege that all the Defendants conducted business in Florida.

gines; the FAA has issued countless Airworthiness Directives relating to problems with the JT8D Pratt & Whitney engines in general, including, but not limited to, warnings as to bogus parts used in the JT8D engines out of Miami, Florida. (Am. Compl. ¶ 37.) In October 2001, Continental retired the subject aircraft to the Mojave Desert in California where it remained for the balance of the lease and degenerated into a state of disrepair. (Am. Compl. ¶ 35.)

Between late 2004 and 2005, PHC made preparations to accept return of the subject aircraft from Continental in anticipation of the expiration of Continental's lease in 2005. (Am. Compl. ¶ 39.) Among other steps, in 2004, PHC contracted Aeronautical Systems, Inc., ("ASI"), an aircraft appraisal, brokerage and technical consultant located in Florida, to inspect the aircraft, its engines and technical documents. (Am. Compl. ¶ 42.) After the inspection, ASI was to provide PHC with return and remarketing consultation services relating to the aircraft. (*Id.*)

Prior to returning the aircraft to PHC, Continental proposed to substitute the original engine in Position 2 with a replacement engine. (Am. Compl. ¶ 43.) Upon inspecting the proposed replacement engine and comparing it to the original engine in Position 2, ASI concluded that the replacement engine had less value and a shorter life expectancy. (*Id.*) According to ASI's engine inspection report, the replacement engine had been assembled with spare parts from other used engines, which increased the problem of traceability for the replacement engine as compared to the original engine. (Am. Compl. ¶ 44.) Moreover, ASI concluded that the replacement engine had a heavy maintenance status that was considerably worse than that of the original engine. (*Id.*) Memoranda regarding these inspections were sent from ASI to Continental and carbon copied to PHC. All of the communications and transactions relating to the replacement of the original engine in Position 2 of the aircraft took place in the United States, many originating in Ft. Lauderdale, Florida. (Am. Compl. ¶ 43.)

Based on its review of the engine, ASI requested that Continental and PHC provide other potential replacement engines for review. (Am. Compl. ¶ 45.) Despite this request, PHC did not cause another replacement engine to be considered, and Continental did not supply any alternative engines for consideration. (*Id.*) Plaintiffs allege that while cognizant that the replacement engine had suspicious replacement parts and a shorter life expectancy than the original engine in Position 2, Continental and PHC caused the original engine in Position 2 to be substituted with the replacement engine that had been assembled from used parts. (Am. Compl. ¶ 46.) Continental agreed to convey the replacement engine to PHC and Wilmington Trust Company (WTC), PHC's trustee at the time, in an agreement dated December 23, 2004. The transaction was allegedly rushed to conclusion in late 2004 so that PHC and WTC could convey the replacement engine to MK Aviation as an integrated component part of the subject aircraft in early 2005. (Am. Compl. ¶¶ 47, 48.) Continental delivered the replacement engine to PHC and WTC at Hobby Airfield in Houston, Texas.

On January 5, 2005, WTC and PHC sold the subject aircraft to MK Aviation, and on January 6, 2005 it was delivered by Continental to MK Aviation in Houston, Texas. (Am. Compl. ¶ 49.) At the time MK Aviation took possession, the aircraft had accumulated more than 48,000 hours and 23,000 cycles. (Am. Compl. ¶ 50.) The aircraft remained in Houston for approximately seven additional months.

On March 15, 2005, Newvac, doing business in Florida as Go–2 Vacations, negotiated and executed a contract in Florida with WCA for use of an MD–8 aircraft. (Am. Compl. ¶ 56, 57, 65). Pursuant to the contract, Newvac contractually assumed all risks associated with air navigation for the entire aircraft for twenty-four specifically identified dates. (Am. Compl. ¶¶ 59–64.) On those dates, Newvac was to have sole and exclusive use of the entire aircraft and it was to select the routes, departure times and itineraries for the flights, while WCA was to supply the aircraft and crew. Due to operational and maintenance concerns relating to the proposed MD–8 aircraft, Newvac caused WCA to substitute the aircraft that later crashed for the MD–8 aircraft contemplated by the contract. (Am. Compl. ¶ 62.)

Pursuant to the contract, Newvac began sole and exclusive use of the aircraft on July 2, 2005. Newvac used the subject aircraft and the WCA crew on seventeen occasions. (Am. Compl. ¶¶ 66.) Newvac's last use occurred on August 16, 2005, the day of the crash. (Am. Compl. ¶¶ 67, 68.)

### LEGAL STANDARD

■ The common law doctrine of *forum non conveniens* permits a court to dismiss a case over which it has jurisdiction, where factors of convenience and justice demonstrate that the matter should proceed in an alternative forum. A party moving to dismiss an action on the basis of *forum non conveniens* "must demonstrate that (1) an adequate alternative forum is available, (2) the public and private factors weigh in favor of dismissal, and (3) the plaintiffs can reinstate their suit in the alternative forum without inconvenience or prejudice ..." *Leon v. Million Air, Inc.*, 251 F.3d 1305 (11th Cir.2001).

### ALTERNATIVE FORUM

■ A defendant bears the burden of persuasion when invoking the doctrine of *foreign non conveniens* and moving to dismiss in favor of a foreign forum. *Camejo v. Ocean Drilling & Exploration*, 838 F.2d 1374, 1379–1380 (5th Cir.1988). This burden of persuasion runs to all the elements of *forum non conveniens* analysis. (*Id.*) Therefore, the moving defendant must establish that an adequate and available forum exists as to all defendants if there are several. If the moving defendant carries this initial burden, it must also establish that private and public interests factors weigh heavily on the side of trial in the foreign forum. (*Id.*) The Supreme Court has held that a moving defendant need not submit overly detailed affidavits to carry its burden, but must provide enough information to enable the district court to balance the parties' interests. *Piper Aircraft Co. v. Reyno*, 454 U.S. 235, 258, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981).

■ For *forum non conveniens* purposes, forum availability and adequacy are separate considerations. With respect to adequacy the "alternative forum need not be perfect." *See Leon v. Million Air, Inc.*, 251 F.3d 1305, 1311 (11th Cir.2001). Nonetheless "[c]ourts have been strict about requiring that Defendants demonstrate that the alternative forum offers at lease some relief." *Id.* Ordinarily, the court will find that an alternative forum exists if the defendant is "amenable to process" in the foreign jurisdiction. *Piper*, 454 U.S. at 262 n. 22, 102 S.Ct. 252 (1981). However, where the remedy offered by the other forum is so unsatisfactory that it forecloses any remedy at all, this requirement may not be satisfied, the district court may conclude that dismissal would not be in the interests of justice. *Piper*, 454 U.S. at 254, 102 S.Ct. 252.

## ANALYSIS

### A. Availability of the Colombian Court

■ Defendants argue Colombian courts can exercise jurisdiction over the instant case on the grounds that (1) Article 23(2) of the Colombian Civil Procedure Code ("CCP") expressly authorizes jurisdiction in matters of this type; (2) the facts of the instant case have a clear connection to Colombia; (3) and Plaintiff's choice of forum is not entitled to deference as the crew members and their representatives are Colombian. (*See* D.E. 304 at 2–7.) Having carefully considered the parties' positions, the affidavits of their Colombian law experts, the applicable rules of jurisdiction contained in the CCP as well as other relevant provisions of Colombian law, and the underlying requirements of the *forum non conveniens* doctrine, the court finds Defendants have satisfied their burden of persuasion that Colombia affords an available alternative forum.

As an initial matter, the court agrees with both parties that Article 23 of the CCP and its subparagraphs contain the basic rules governing jurisdiction in the Colombian courts. Most relevant to this case is Article 23(2) which states "If the defendant has no domicile, the judge of his residence is competent, and if the defendant does not reside in the country, the judge of the plaintiff's domicile is competent." (*See* D.E. 244–2.) The court further agrees with Defendants and their experts, Professors Luis Fernando Salazar–Lopez and Bernardo Salazar, that pursuant to the plain and literal terms of Article 23(2), Colombian courts of Plaintiffs' domiciles can exercise jurisdiction over the claims asserted in the present consolidated action given the fact that all the Plaintiffs are domiciled in Colombia and Defendants are not. Although Defendant's expert, Professor Reyes, contends that Article 23, taken as a whole, evinces a preference

under Colombian law that corporations be sued in their place of domicile, the fact remains that Article 23(2) expressly addresses the situation where no defendant is domiciled or resident in Colombia and, in that event, plainly authorizes jurisdiction in the plaintiff's domicile. Similarly, Article 23(8) permits a Colombian court situated where a tortious act occurred to exercise jurisdiction, regardless of the domicile or residence of the defendant. Therefore, Article 23 clearly provides for exceptions to the general rule in Colombian law, if it exists, that corporations be sued where they are domiciled.

In reaching the conclusion that a Colombian court would take jurisdiction of this matter consistent with the literal language of Article 23(2), this court further finds persuasive Professor Salazar's opinion that there are at least two other enactments in Colombia which suggest that the Defendants would be subject to liability in Colombian courts. The first is Article 78 of the Colombian Constitution which provides that one who "participates in the manufacturing and commercialization of good and services that affect the health or the security of consumers and users" is subject to liability under Colombian law; Article 78 apparently makes no distinction between foreign and domestic manufacturers and distributors. (Pls.' Resp., Ex. D ¶ 37.) The second is Decree 3466 of 1982 of the Colombian Consumer Statute (Decree 3466) which authorizes consumers and users to bring product liability claims against manufacturers, importers, and/or dealers for breach of warranty, breach of registered or announced quality standards, and for the payment of the damages caused by the defective products or services. (Pls.' Resp., Ex. D ¶ 38.) Salazar explains that the word "producer" under Decree 3466 means "every person, natural or legal entity, who produces, processes, transforms, or uses one or more goods

with the purpose of obtaining one or more products or services addressed to the public consumption" and that the statute also makes no distinction between foreign and domestic "producers."

Plaintiffs' Colombian law expert, Professor Francisco Reyes recognizes, as he must, that in Colombia, a civil law country, the jurisdiction of the courts is established only by the Colombian Constitution, codes, statutes and treaties. Nonetheless, he urges this court to follow a Colombian Supreme Court of Justice ("SCJ") decision holding that the subject matter of a claim must have a "relational connection" to Colombia in order for a Colombian court to exercise jurisdiction and that Plaintiffs' domicile, standing alone, does not satisfy that requirement He also cites to scholars who have authored treatises who support that position. (Pls.' Resp., Ex. F ¶ 22.) Plaintiffs have failed to submit the SCJ case for the Court's review; thus, the Court accords little weight to Professor Reyes's description and interpretation of the SCJ decision. However, it appears to the undersigned that, in any event, there is a "relational" basis for jurisdiction under Colombian law consistent with the interpretations stated in the treatises to which Reyes cites. According to Professor Reyes, the relevant considerations to establish jurisdiction are "objective, subjective, functional, territorial and connection to the jurisdiction." (Pls.' Resp., Ex. F ¶ 22). These factors would appear to be present in this case given that Plaintiffs are domiciled in Colombia, the decedents were Colombian domiciliaries, Plaintiffs' damages accrued in Colombia, and WCA, a Colombian airline, supplied the allegedly defective aircraft.

The undersigned also is unpersuaded by Professor Reyes's opinion that Defendants' inability to cite any case law from Colombian courts indicating that Colombian nationals can initiate tort suits against foreign defendants for wrongful conduct occurring outside Colombia somehow shows that Colombia is not an available forum. Given the clarity of Article 23(2), the court finds more significant that Plaintiffs and their expert fail to produce any cases, articles or excerpts from treatises identifying instances where Colombian courts have denied jurisdiction to their own citizens who have suffered damages as a result of extra-territorial wrongful conduct.

Lastly, the court notes its disagreement with Plaintiffs that they have an absolute right to select the forum, whether foreign or domestic, under Colombian law. While that may be the law in Colombia, that is not the law in the United States where this action is currently pending. And Plaintiffs have submitted no authority suggesting that the Colombian courts would decline to exercise jurisdiction over this case on the ground that it was initiated by Plaintiffs in the United States. The Supreme Court case on which Plaintiffs rely to make this argument also was not supplied, but appears simply to hold that a Colombian court will not disturb the Plaintiffs' choice of another Colombian forum. More to the point, Defendants' have provided at least one illustration of a case dismissed by an American court on the grounds of *forum non conveniens* and then re-filed and litigated in Colombia. (*See* D.E. 304, Ex. B.)

### C. *Adequacy of the Forum*

An alternative forum is "presumed" adequate unless the plaintiff makes some showing to the contrary." *Leon*, 251 F.3d. at 1312. "An adequate forum need not be a perfect forum." *Satz v. McDonnell Douglas Corp.* 244 F.3d 1279, 1283 (11th Cir.2001.) However, "where the remedy offered by the other forum is clearly unsatisfactory, the other forum may not be an adequate alternative . . ." *Piper Aircraft*, 454 U.S. at 255 n. 22, 102 S.Ct. 252. Plaintiffs argue that the lack

of safety and security for witnesses and lawyers in Colombia makes the Colombia court an unsafe and inadequate alternative forum. (Pls.' Resp. 7.) Plaintiffs submit Exhibit M, a French Report, indicating that on one occasion, a Colombian paramilitary group intimidated witnesses and Colombian Judges in an effort to frustrate their testimony or investigation into the subject accident. (Pls.' Ex. M.) Plaintiffs also submit documents from the U.S. State Department and other human rights reports that generally warn U.S. citizens of the dangers of traveling to Colombia. (Pls.' Exs. N, O, P, Q, R.) The court has reviewed Plaintiffs' exhibits, and is not persuaded that the safety concerns the documents identify establish that the Colombia court is so unsatisfactory that it forecloses any remedy. Although imperfect, the court finds Colombia to be an available and adequate forum in which Plaintiffs can pursue their claims. *Satz*, 244 F.3d. at 1283.

Since Defendants have established the availability and adequacy of an alternative forum, the court must now determine whether private and public interests factors weigh in favor of dismissal on grounds of *forum non conveniens.*

**D.** *Private and Public Interests Factors*

i. *Plaintiffs' choice of forum*

 "There is ordinarily a strong presumption in favor of the plaintiffs' choice of forum, which may be overcome only when the private and public interest factors clearly point towards trial in the alternative forum." *Piper Aircraft*, 454 U.S. at 255, 102 S.Ct. 252. However, the presumption applies with less force when the plaintiffs are foreign. *La Seguridad v. Transytur Line*, 707 F.2d 1304, 1307 (11th Cir.1983). Here, all nine Plaintiffs are Colombian citizens. Thus, the court must apply a weaker presumption and less deference towards Plaintiffs' choice of forum. Nevertheless, "less deference" to their choice of forum does not mean "no deference." The burden remains with the Defendants to establish that the private and public interest factors heavily weigh in favor of dismissal.[3]

ii. *Private Interests Factors*

The Court's consideration of private interest factors include the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of the premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Piper Aircraft*, 454 U.S. at 241 n. 6, 102 S.Ct. 252.

 Defendants argue that the following private interest factors weigh in favor

---

**3.** Despite the fact that Plaintiffs herein are foreign, Plaintiffs also argue that they should receive the full benefit of the presumption in favor of their chosen forum because Colombia and the United States have a treaty guaranteeing Colombian citizens access to the United States courts equal to that of United States citizens. (Pls.' Resp. 10–11.) Notably, Plaintiffs did not supply the treaty. Moreover, this court has previously held that these friendship treaties apply to legal actions involving citizens of one signatory who are "transient or dwelling" in the territory of the other signatory. *Da Rocha v. Bell Helicopter Textron, Inc.*, 451 F.Supp.2d 1318, 1323 (S.D.Fla.2006). Similarly, the Court finds here that the Plaintiffs do not meet this criterion. Thus, the treaty does riot require that Plaintiffs' choice of forum be given substantial deference. However, even given this consideration, the Court finds that the private and public interest factors weigh in favor of maintaining the action in the United States.

of dismissal; (1) WCA's absence from the present action; (2) litigating in Colombia would provide greater access to evidence; (3) the fact that this court cannot compel liability evidence or third party damages evidence; (4) litigating the crew member claims in the United States would cause Defendants to defend litigation arising out of the same accident simultaneously in multiple forums, (5) the existence of ongoing Colombian litigation; (6) all relevant documents and witnesses within Defendant's control would be made available by Defendants in Colombia. (*See* D.E. 245 at 10–16.)

The court begins its consideration of the private interest factors by noting that, in sum and substance, the Amended Complaint asserts product liability claims relating to the construction and maintenance of the subject aircraft and its engines, as well as negligence claims (failure to warn) relating to the aircraft's condition of disrepair while it was in Defendants' custody and control in the United States. The companies that owned, operated and maintained the aircraft and supplied its engine parts for at least nineteen years prior to the accident are located in the United States. Indeed, it appears the subject aircraft was in use overseas for only about one month prior to the crash. Additionally, the accident occurred not in Colombia, but in Venezuela. Thus, while some relevant liability evidence may be in the possession of WCA and other third parties in Colombia and other important liability evidence may be in Venezuela, the majority of the evidence pertaining to the construction, maintenance, and repair of the subject aircraft and its engine parts is most likely located in the United States.

While this imbalance is addressed to a degree by Defendants' willingness to make their current employees available to testify in Colombia, Defendants cannot ensure that all of the critical liability evidence is in its possession or control given the lengthy history associated with the aircraft. For example, there surely will be former employees with knowledge of the construction and maintenance of the aircraft and the engine parts, and employees of other entities, such as ASI, which were involved with the aircraft over whom Defendants will have no control. Accordingly, Plaintiffs are far more likely to be able to secure the appearance of all relevant liability witnesses if the case is heard in a United States court.

As for documents, Defendants represent that they will make whatever documents are in their possession or control available in Columbia. However, Defendants concede that all of the manufacturing specifications, other technical documents and the maintenance records are in English and this court only can presume that they are voluminous. While Defendants seek to minimize this problem by suggesting that only a small portion would have to be translated in order to support expert affidavits, it seems more likely to the undersigned that a Colombian court would require that all documents with evidentiary value be translated into Spanish. The translation of these types of documents can be unreliable and controversial. Also, the translation would cause substantial delay and be exceedingly expensive. Additionally, there likely are documents in the possession of third parties, such as ASI, that could be critical to the Plaintiffs' case that could be difficult for Plaintiffs to obtain if this matter were litigated in Colombia and which Plaintiff would need to translate for presentation to a Colombian court.

Defendants make much of the fact that some liability evidence will be located in Colombia, such as WCA's records and witnesses regarding the aircraft. However,

given that the aircraft was only in WCA's possession for about one month prior to the crash and that it appears that WCA's crews may have been trained locally, such evidence is bound to be scant in comparison to the volume of records generated during the nineteen years that the aircraft was residing in the United States. Therefore, to the extent such evidence is located in Colombia, the burden on Defendants from having to employ letters rogatory to obtain it will be less than if Plaintiffs are required to rely on such devices to obtain critical liability evidence from the United States for presentation in a Colombian court. In this regard, the court concedes that letters rogatory are expensive and inefficient; but it appears that in this case they are unavoidable; there simply is no perfect forum since the accident occurred in Venezuela, the aircraft was manufactured and maintained for most of its history in the United States, the crew was Colombian and the flight was chartered out of Florida.

As for damages evidence, family members, heirs and survivors of the crew members, WCA employment records, Plaintiffs' medical records and other records relating to claims for economic losses are most likely located in Colombia. However, much of this evidence is in Plaintiffs' control and, because Plaintiffs have the greater interest in pursuing the case to conclusion, the court anticipates that Plaintiffs will voluntarily produce much of the damages evidence in the United States. The balance presumably can be obtained through letters rogatory. In any event, due to the breadth of Plaintiffs' product liability and negligence claims, the availability of liability witnesses and documents in the United States outweighs the lack of availability in the United States of some liability and damages evidence that will have to be accessed from Colombia.

Finally, the court is not persuaded by Defendants' argument that the absence of WCA would prejudice their defense at trial or cause incomplete or fragmented adjudication of the present case. As Plaintiffs' point out, Florida law permits Defendants, as an affirmative defense, to attribute tort liability to a party who is absent from the litigation. *See Fabre v. Marin,* 623 So.2d 1182, 1185 (Fla.1993); *See* Fla. Stat. § 768.81. Due to the availability of this affirmative defense, Defendants actually may enjoy an advantage from WCA's absence during a jury's determination of liability. Moreover, if Colombia is an available and adequate forum, as Defendants contend, it is plausible that at the close of the litigation, Defendants, if found liable, could pursue contribution from WCA in Colombia. As to the two Plaintiffs' civil actions in Colombia against the Special Administrative Unit of Civil Aeronautics of Colombia, the disposition of these actions is disputed, and the court is unable to conclude from their existence that litigation of this case in the United States would cause fragmented or duplicative litigation or pose a risk of inconsistent adjudications, particularly since it does not appear that any of the Defendants herein have been named as parties in those lawsuits.

In sum, after carefully considering the arguments of the parties, the court finds that the private interests factors do not weigh in favor of dismissal. The undersigned concludes that if Plaintiffs' claims against Defendants are permitted to proceed in this court, the parties, by and large, will have greater access to important witnesses and documents and the procurement and presentation of relevant evidence will be less costly and more efficient.

iii. *Public Interest Factors*

The public interests factors to be considered include:

The administrative difficulties flowing from court congestion; the local interest in having localized controversies decided at home; the interest in having the trial of a diversity case in a forum that is at home with the law that must govern the action; the avoidance of unnecessary problems in conflict of laws; or in the application of foreign law; and the unfairness of burdening citizens in an unrelated forum with jury duty.

*Piper Aircraft,* 454 U.S. at 241 n. 6, 102 S.Ct. 252

■■■ With respect to the public interest factors, Defendants argue only that Colombia has a greater interest in the litigation to that of Florida or the United States as a whole, that litigation in this court would impose an undue administrative burden, and that dismissal of the action on *forum non conveniens* grounds would avoid unnecessary conflict of law problems. (*See* D.E. 296 at 9–10.) Accordingly, the court will only address these three factors.

First, although Colombia has a strong interest in adjudicating this lawsuit because it involves injuries to its citizens, the United States generally has a strong interest in assuring that United States manufacturers and airlines do not produce defective products or engage in conduct that endangers users wherever located. Additionally, the United States has a direct and specific interest in this particular case since the allegedly defective aircraft was used to charter U.S. residents for nearly nineteen years; on the other hand, WCA only had control of the aircraft for one month and, even then, it was used to ferry passengers between locations outside of Colombia.[4] Therefore, the court finds that

the United States has a substantial interest in the outcome of this litigation that is not heavily outweighed by Colombia's interest. Accordingly, the Court finds this public interest factor does not weigh in favor of dismissal.

Next, the Defendants have not demonstrated that the administrative burden posed by this case would be excessive. This case is not like *Nolan v. Boeing Co.,* 762 F.Supp. 680 (E.D.La.1989) which involved more than 100 plaintiffs. Instead, this case involves eight wrongful death claims against U.S. domiciled defendants and concerns an aircraft which was resident in the United States for nineteen years prior to the crash. While the litigation of these claims undoubtedly will be complex, Defendants have failed to make a persuasive case that the complexities will exceed other large, complex product liability cases that have been tried to conclusion in this district.

Finally, with respect to the interest in the avoidance of conflict of laws issues, the Eleventh Circuit has held that "[w]hile the application of foreign law is an important factor to be considered in weighing the public interests factors, this factor cannot be accorded dispositive weight." *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.,* 382 F.3d 1097, 1104 (11th Cir.2004.) In any event, it is unclear at this juncture whether there will be any actual conflict between Colombian law and United States law on the issues of liability and damages necessitating a choice of law analysis. With respect to the capacity of the Plaintiffs to pursue claims on behalf of decedents, there likely will be a need to apply foreign law; but this court is fre-

---

4. This court also agrees with Plaintiffs that Florida has a significant interest in the case being litigated in this district since it appears that Newvac arranged the charter from Florida, Newvac purchased replacement parts for the aircraft for WCA from Florida companies, ASI, which is based in Ft. Lauderdale, inspected and evaluated the aircraft at the end of Continental's lease, and WCA may have trained its pilots in Florida.

quently called upon to make such determinations in international air crash cases.

Accordingly, the public interest factors identified by Defendants do not weigh in favor of dismissal of this case to Colombia.

Based on the foregoing, it is hereby,

ORDERED AND ADJUDGED, Defendant's Motion to Dismiss Plaintiffs' Third Amended Complaint pursuant to the doctrine of *forum non conveniens* is DENIED.