[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-15828

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
Oct. 8, 2009
THOMAS K. KAHN
CLERK

D. C. Docket No. 07-61165-CV-UU

ANNICK JOELLE PIERRE-LOUIS,
ANTOINE VINCENT GUYARD,
THIBAUD GUYARD, a minor, by
his father Antoine Vincent Guyard, individually as
heirs of Abdon Joesph Pierre-Louis, deceased and individually
as heirs of Lawrence Pierre-Louis, deceased,
LEON NOEL EDMOND LORNE,
MELANIE SUZIE MARTINE, a minor, by her mother Marie-Nelly
Martie individually as heirs of Serge Nal, deceased.

Plaintiffs-Appellants,

versus

NEWVAC CORPORATION,
a Florida corporation,
GO 2 GALAXY, INC.,
a Florida corporation,
WEST CARIBBEAN AIRWAYS, S.A.,
a Columbian corporation,

Defendants-Appellees.

_____

No. 07-15830

_____

D. C. Docket No. 06-61813-CV-UU

SYLVIA BAPTE,
Individually and as personal representative
of the Estates of CHRISTIANE BAPTE, deceased,
and SYLVAIN BAPTE, deceased,
STEPHANIE ISABELLE BAPTE,
AUBIN CASIMIR,
MARYVONNE BAPTE, et. al.,

Plaintiffs-Appellants,

versus

NEWVAC CORPORATION, a Florida corp.,
GO 2 GALAXY, INC., a Florida corp.,
WEST CARIBBEAN AIRWAYS, S.A., a Columbian Corp.

Defendants-Appellees.

_____

No. 07-15902

_____

D. C. Docket No. 06-22748-CV-UU

HENRI GALBERT, as personal representative of the
Estate of Nicolas Massal, Deceased, et al.,

Plaintiffs,

2

NICOLAS MASSAL, MURIELLE MASSAL, MAEVA MASSAL,
JOSEPH GALBERT, MARIE GALBERT, JOACHIM-ARNAUD,
PAUL BERISSON, GEORGES BERISSON, RAPHOSE,
MARIE LUCE, JOSEPH BONIFACE, SCAGLIONI, LANOIR,
MONTLOUIS FELICTE, ALEX PETERS, BERTON,
RAPHAELLE COUFFE, ROBERT COUFFE, MARIE PETERS,
VIOLTON, SOHAN VENTAKAPEN, MICHEL VENTAKAPEN,
EUDARIC, BERTIN MARIE-LUCE, CHARLES CABRERA,
ROSAMOND, CATHERINE CABRERA, DENIS RAMIN,
LAURENCE RAMIN, DURANVILLE, HENRI HOSPICE,
ADREE HOSPICE, MAQUIABA, VICTORIN, IPHAINE,
LEGENDART, BERMONT, FLORINE, LAURENT, MAGLOIRE,
SAINTE-ROSE, ANTISTE, JEREMIE BOCLE, NAL,
DIJON, PEPINTER, PORRO, BAPTE, TAUPIN,

Plaintiffs-Appellants
Cross-Appellees,

THE ESTATE OF FRANCIS BERTON,
THE ESTATE OF MARIE-PIERRE CADARE,
THE ESTATE OF RAPHAELLE COUFFE,
MARIE-ODILE MONLOUIS-FELICITE,
THE ESTATE OF DAVID SCAGLIONI,

Plaintiffs,

versus

WEST CARIBBEAN AIRWAYS, a Colombian corporation,
ASEGURADORO COLSEGUROS, S.A., a Colombian
corporation,

Defendants-Appellees,

NEWVAC CORPORATION, a Florida corporation,
GO 2 GALAXY, INC., a Florida corporation,
JAQUES CIMETIER, individually,

3

_____

Appeals from the United States District Court
for the Southern District of Florida

_____

(October 8, 2009)

Before BARKETT and HULL, Circuit Judges, and QUIST,[*] District Judge.

BARKETT, Circuit Judge:

This consolidated appeal arises from several wrongful death actions brought by the survivors of passengers killed in the crash of a McDonnell Douglas MD-82 aircraft, operating as West Caribbean Airways Flight 708, in the mountains of Venezuela.  All of the appellants/cross-appellees, plaintiffs in the proceedings below ("Plaintiffs"), are natural persons and residents of Martinique, a Department of the Republic of France, and represent the deceased passengers of Flight 708.[1] The appellees/cross-appellants, defendants below ("Defendants"), are (1) West Caribbean Airways, a Colombian corporation operating the chartered plane that crashed, (2) two Florida Corporations, Newvac and Go 2 Galaxy, Inc., and (3) the

---

[*]  Honorable Gordon J. Quist, United States District Judge for the Western District of Michigan, sitting by designation.

[1] The crew members of Flight 708 are not plaintiffs in this action and have filed a separate action in the Southern District of Florida.

4

president of Newvac and Go 2 Galaxy, Jacque Cimetier.[2] Newvac is the entity that chartered the West Caribbean plane for round-trip flights from Martinique to Panama. After entering into the charter contract with West Caribbean, Newvac contracted with Globe Trotter Agency, a Martinique travel agency, and agreed to provide the aircraft it had chartered, as well as hotel, transportation, and sightseeing services, for excursions between Martinique and Panama. These excursion packages were then to be sold by Globe Trotter to individual passengers in Martinique.

Newvac moved to dismiss the suit on the basis of forum non conveniens and the district court granted the motion, finding that Martinique was the more convenient forum for resolution of the survivors' claims.[3] Plaintiffs appeal that ruling, arguing that the doctrine of forum non conveniens does not apply because the international treaty that regulates the liability of carriers to passengers on international flights, the Convention for the Unification of Certain Rules for International Carriage by Air (the "Montreal Convention" or "Convention"),

---

[2] We will refer to Newvac, Go 2 Galaxy, and Cimetier collectively as "Newvac."

[3] Defendant West Caribbean Airways filed a motion to dismiss for lack of personal jurisdiction which has been held in abeyance until the forum non conveniens issue is finally decided.

5

precludes application of the doctrine as a matter of international law.[4]

Alternatively, Plaintiffs argue that, even if the Convention permits application of the doctrine, the district court abused its discretion in applying it here.

## I.

The doctrine of forum non conveniens permits a court with venue to decline to exercise its jurisdiction when the parties' and court's own convenience, as well as the relevant public and private interests, indicate that the action should be tried in a different forum. A defendant seeking dismissal for forum non conveniens bears the burden of demonstrating:

> (i) that an adequate alternative forum is available, (ii) that relevant public and private interests weigh in favor of dismissal, and (iii) that the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice. Pertinent private interests of the litigants include relative ease of access to evidence in the competing fora, availability of witnesses and compulsory process over them, the cost of obtaining evidence, and the enforceability of a judgment. Relevant public interests include the familiarity of the court(s) with the governing law, the interest of any foreign nation in having the dispute litigated in its own courts, and the value of having local controversies litigated locally.

Liquidation Comm'n of Banco Intercontinental, S.A. v. Renta, 530 F.3d 1339, 1356-57 (11th Cir. 2008) (quotations and citations omitted).

Plaintiffs argue that the district court was precluded from applying this

---

[4] The district court's conclusions regarding the availability of forum non conveniens under the Montreal Convention is a legal determination which we review de novo.

6

doctrine by the Montreal Convention, which is the exclusive means by which international air travel passengers can seek damages for death or personal injury in cases covered by it.[5]  Chapter III of the Convention is entitled "Liability of the Carrier and Extent of Compensation for Damage."  Article 33, located in Chapter III, is the jurisdictional provision which specifies in which fora such suits can be brought:

1.      An action for damages must be brought, at the option of the plaintiff, in the territory of one of the States Parties, either before the court of the domicile of the carrier or of its principal place of business, or where it has a place of business through which the contract has been made or before the court at the place of destination.

2.      In respect of damage resulting from the death or injury of a passenger, an action may be brought before one of the courts mentioned in paragraph 1 of this Article, or in the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence and to or from which the carrier operates services for the carriage of passengers by air. . . .

Thus, under Article 33 of the Convention, suits for damages by passengers on international flights can be filed in a limited number of fora, including, inter alia, the domicile of the "carrier" or the principal place of business of the "carrier." In the case of damage resulting from the injury or death of a passenger, suit may be brought in the passenger's permanent residence if the "carrier" operates air carriage services to or from that location.

---

[5] Both the United States and France are parties to the Montreal Convention.

The term "carrier" is undefined in the Convention. However, Chapter V of the Convention, entitled "Carriage by Air Performed by a Person other than the Contracting Carrier," addresses situations in which there is both a "contracting carrier" and an "actual carrier." Article 39, located in Chapter V of the Convention, provides the definitions for "contracting carrier" and "actual carrier":

> The provisions of [Chapter V] apply when a person (hereinafter referred to as "the contracting carrier") as a principal makes a contract of carriage governed by this Convention with a passenger or consignor or with a person acting on behalf of the passenger or consignor, and another person (hereinafter referred to as "the actual carrier") performs, by virtue of authority from the contracting carrier, the whole or part of the carriage, but is not with respect to such part a successive carrier within the meaning of this Convention. Such authority shall be presumed in the absence of proof to the contrary.

These definitions are significant because Article 40, in Chapter V, provides that "[i]f an actual carrier performs the whole or part of carriage which, according to the contract referred to in Article 39, is governed by this Convention, both the contracting carrier and the actual carrier shall, except as otherwise provided in [Chapter V], be subject to the rules of this Convention, the former for the whole of the carriage contemplated in the contract, the latter solely for the carriage which it performs."

In turn, Article 45 provides that a plaintiff may bring an action for damages under the Convention against the actual carrier or the contracting carrier, or against

8

both together or separately, and Article 46 specifies the fora in which a plaintiff may bring such a suit. Article 46 provides that "[a]ny action for damages contemplated in Article 45 must be brought, at the option of the plaintiff, in the territory of one of the States Parties, either before a court in which an action may be brought against the contracting carrier, as provided in Article 33, or before the court having jurisdiction at the place where the actual carrier has its domicile or its principal place of business." The district court found that Newvac and/or Go 2 Galaxy was the "contracting carrier" for the flight at issue, and thus the lawsuit was filed in an appropriate forum pursuant to the Convention.[6]

The district court next found, however, that although it had jurisdiction, the Convention did not preclude application of forum non conveniens. In so holding, the district court relied on Article 33(4) of the Convention, which provides that "[q]uestions of procedure shall be governed by the law of the court seised of the case." The district court reasoned that because the doctrine of forum non

_____

[6] Newvac challenges this holding on cross-appeal. We find no merit to this contention. The district court properly concluded that because "Newvac knowingly assumed the responsibility to supply the aircraft and crew, and to otherwise conduct itself as a carrier, for the transportation of Globe Trotter's customers," it was a "contracting carrier" within the meaning of Article 39 of the Montreal Convention. The court correctly rejected Newvac's argument that because the actual passengers were not known to Newvac at the time it contracted with Globe Trotter, Newvac could not be a "contracting carrier" under the Convention. The Newvac-Globe Trotter contract clearly provided that Globe Trotter would procure passengers for the flights and tour packages that would be supplied by Newvac and that, once the passengers had been procured, Globe Trotter would forward their information to Newvac so Newvac could issue the relevant travel documents, including individual passenger tickets.

9

conveniens is part of United States civil procedure, the Convention unambiguously permits its application in accordance with the law of the forum. The district court also concluded that the shared expectation of the states party to the Convention was that those states which recognized the doctrine could continue to apply it. We find no error in these conclusions.

When interpreting a treaty, we begin with the words of the treaty in the context in which the words are used. Volkswagenwerk Aktiengesellschaft v. Schlunk, 486 U.S. 694, 699 (1988). Plaintiffs concede that the starting point of treaty interpretation is the relevant text and recognize that the treaty expressly provides that "[q]uestions of procedure" are governed by the law of the forum in which the case is validly brought. They argue, however, that because the Convention does not specifically affirm the availability of forum non conveniens, it should not be permitted in cases arising under it. We find this argument untenable for two reasons. First, there is no dispute that forum non conveniens is a "question[] of procedure" under U.S. law and thus it clearly falls within the ambit of Article 33(4). Second, under Plaintiffs' theory, all state procedural rules would have to be specifically enumerated in order to be applicable under the Convention, and we do not believe the Convention's drafters intended such an absurd result.

Plaintiffs further argue that to permit the application of forum non

10

conveniens would undermine the purpose and implementation of the Convention's jurisdictional provisions, which have already enumerated the five "convenient" jurisdictions for purposes of adjudicating international carrier liability. Although we acknowledge Plaintiffs' concerns, we think the purpose of the Convention is adequately safeguarded under traditional forum non conveniens analysis. As the district court pointed out, forum non conveniens would permit dismissal under the Convention only if the alternative forum was authorized to hear the case under Article 33(1) or (2) and was "demonstrably the more appropriate venue."

We therefore find no ambiguity or limitation in the express language of Article 33(4), which states in no uncertain terms that questions of procedure—which can only reasonably be read to include all questions of procedure—are governed by the rules of the forum state.[7] As the district court correctly noted, the doctrine of forum non convenience is "firmly entrenched in the procedural law of the United States." In addition, we are satisfied that a district court may—where appropriate—exercise its discretion to apply forum non

---

[7] The two cases on which Plaintiffs principally rely, Hosaka v. United Airlines, Inc., 305 F.3d 989 (9th Cir. 2002), and Milor v. British Airways, Plc., [1996] Q.B. 702 (Eng. C.A.), are distinguishable and do not, as Plaintiffs suggest, create an ambiguity in Article 33(4). Among other distinguishing factors, both cases involved interpretation of the Warsaw Convention, a predecessor to the Montreal Convention drafted in 1929, at which time forum non conveniens, in its current form, was not recognized under U.S. law. Indeed, the Hosaka court explicitly noted that it was not addressing the applicability of forum non conveniens under the (at the time un-ratified) Montreal Convention.

11

conveniens, without interfering with the implementation of the Convention, so long as another Convention jurisdiction is available and can more conveniently adjudicate the claim.[8]

## II.

Having found that the Convention is not a bar to the application of forum non conveniens, we turn to Plaintiffs' alternative argument that the district court abused its discretion in applying it here. As noted, a party seeking dismissal for forum non conveniens must demonstrate:

(1) that an adequate alternative forum is available,

(2) that relevant public and private interests weigh in favor of dismissal, and

(3) that the plaintiff can reinstate his suit in the alternative forum without undue inconvenience or prejudice.

Plaintiffs do not challenge the district court's determination that Martinique is an adequate alternative forum or that they can reinstate their suit in Martinique without undue prejudice or inconvenience. Rather, Plaintiffs argue that the district court abused its discretion by failing to adequately analyze the relevant private and public interest factors. We find no merit to Plaintiffs' arguments.

---

[8] Contrary to Plaintiffs' assertions, we think the drafting history of the Convention is clear that it was the shared intent of the states party that each state could continue to apply its procedural rules, including forum non conveniens.

12

In determining whether to grant a motion to dismiss for forum non conveniens, courts consider such private interests as the comparative ease of access to evidence in the competing fora, the availability of witnesses and compulsory process over them, and the cost of obtaining evidence. See, e.g., Renta, 530 F.3d at 1356-57; King v. Cessna Aircraft Co., 562 F.3d 1374, 1383-84 (11th Cir. 2009); La Seguridad v. Transytur Line, 707 F.2d 1304, 1307 (11th Cir. 1983).

Ordinarily, these private factors would weigh in favor of a plaintiff residing in the forum state and therefore, we apply a presumption of convenience to U.S. residents suing in U.S. courts. See SME Racks, Inc.v. Sistemas Mecanicos Para Electronica, S.A., 382 F.3d 1097, 1100-01 (11th Cir. 2004). This deference, though still applicable, is weakened when plaintiffs are non-U.S. residents. Id. Plaintiffs argue, however, that although they are not U.S. residents, their choice of forum is entitled to heightened deference because their access to U.S. courts is granted by an international treaty with a specific venue provision. The logic of this conclusion stems from the fact that the Convention has already done part of the work in selecting a convenient forum–all potential jurisdictions under the Convention bear some connection, broadly speaking, to the air crash. Thus, their choice of forum is entitled to greater deference than non-U.S.-resident plaintiffs not acting pursuant to a treaty. Among other things, Plaintiffs point out that, unlike

13

other defendants who may be surprised by U.S. lawsuits by foreign plaintiffs, international air carriers are aware of the Montreal Convention and can prepare, with their insurers, for the possibility of liability under it.

Regardless of the merits of Plaintiffs' argument on this point, however, the analysis cannot end with a presumption of convenience, but must address the actual convenience of the various available fora. See Cessna Aircraft Co., 562 F.3d at 1383 (noting that "although citizenship often acts as a proxy for convenience in the forum non conveniens analysis, the appropriate inquiry is indeed convenience"); see also Aldana v. Del Monte Fresh Produce N.A., Inc., –F.3d–, No. 07-15471, 2009 WL 2460978, at *9 (11th Cir. Aug. 13, 2009) (affirming the district court's dismissal on the basis of forum non conveniens where plaintiffs were residents of the U.S., but all other private interest factors favored dismissal). As the district court correctly pointed out, the greater deference accorded to a U.S. resident follows from the reasonable assumption that a plaintiff choosing her home forum does so because it is convenient. See Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981).

In this case, as the district court noted, Defendants have conceded liability and waived applicable damage caps under the Convention in the Martinique court. Thus, the only issue to be tried—and therefore the principle focus of the

convenience analysis—is the amount of damages to which each Plaintiff is entitled. Therefore, with respect to the availability of evidence and witnesses, the analysis strongly favors Martinique, the residence of all the Plaintiffs. Plaintiffs do not dispute that all of the witness and documentary evidence regarding damages, as well as all or virtually all of the non-party factual witnesses, are located in Martinique, beyond the compulsory process of the district court. To the extent that non-party witnesses in Martinique would be willing to testify in Florida, they would have to travel to the United States at considerable expense and personal inconvenience.

Plaintiffs counter that any expense or other burden associated with gathering and producing damages evidence will be theirs to bear, because it is their burden to prove damages. They further point out that Defendants have offered no details regarding any actual inability to procure non-U.S. witnesses or evidence on the damages issue and that, in the days of satellite telephones and inexpensive air travel, these arguments are entitled to less weight. Although we acknowledge Plaintiffs' arguments on this point, we cannot say that the district court abused its discretion in determining that the United States was an inconvenient forum for <u>both</u> parties in which to determine damages. In other words, the ability of the Defendants to prepare their defensive case with respect to damages is a proper

15

consideration in the convenience analysis.[9]

Nor did the district court err when it rejected Plaintiffs' argument that because Defendants' potential third-party claims against U.S. manufacturers could more conveniently be brought in the United States, private interest considerations militated against dismissal.[10] Plaintiffs do not contend that the U.S. manufacturers cannot be impled in an action in Martinique nor that evidence pertaining to such third-party claims is not available in Martinique.[11] Although access to U.S.

---

[9] The district court recently denied a dismissal on forum non conveniens grounds in the related case brought by the crew members who perished in the same crash as Plaintiffs. In re West Caribbean Crew Members, 632 F. Supp. 2d 1193 (S.D. Fla. 2009). Plaintiffs point out that the crew members, like Plaintiffs, are non-U.S. residents, and therefore litigation of their claim in a U.S. court gives rise to the same evidence issues the district court relied upon in dismissing their case on forum non conveniens grounds. We disagree. The crew member claims are product liability claims and thus are distinct from Plaintiffs' claims under the Montreal Convention, pursuant to which liability is presumed. We are therefore not persuaded that the district court's forum non conveniens analysis as to Plaintiffs' claims is inconsistent with, or should be affected by, its adjudication of the crew member claims in a U.S. forum.

[10] Plaintiffs argue that the process of apportioning liability between the carrier Defendants and the U.S. manufacturers in France, with its complex evidentiary and translation issues, will cause them an "inconvenient" delay. However, we are not convinced that such a delay will be significantly worse in France than in the United States, nor in any event do we believe that the district court's rejection of this argument constitutes an abuse of discretion. Moreover, Plaintiffs' reliance on Piper Aircraft Co. v. Reyno, 454 U.S. 235, 255-56 (1981) is somewhat misplaced. In that case, it was Defendants who argued that Plaintiffs' choice of forum would prejudice their ability to implead third parties, and the Supreme Court agreed that it was more convenient to resolve all claims in one forum. Here, of course, Defendants have proposed the alternative forum.

[11] Plaintiffs argue that it is not their burden to demonstrate that evidence regarding third-party claims will be accessible in Martinique, Leon v. Million Air, 251 F.3d 1305, 1311 (11th Cir. 2001), and that the district court impermissibly shifted the burden of persuasion to Plaintiffs to demonstrate why Martinique would be inconvenient to them. While it is true as a matter of law that Defendants bear the burden of persuasion on forum non conveniens, we are not persuaded by this argument. The district court's observation that Plaintiffs would not be

16

manufacturers' evidence is admittedly somewhat more difficult in a foreign forum as opposed to the United States, the district court did not abuse its discretion in finding that this burden—which is Defendants alone to bear in any event—was outweighed by the inconvenience to both parties of accessing damages evidence in Martinique, respecting over a hundred decedents and their beneficiaries.

Public interest considerations include factors such as (1) the forum's interest in entertaining the suit; (2) court congestion and jury duty generated by the lawsuit; (3) the desirability of having localized controversies decided at home; and (4) the difficulty in determining applicable law and applying foreign law. La Seguridad, 707 F.2d at 1307. The district court likewise did not abuse its discretion in determining that these factors weigh in favor of Martinique as the proper forum for Plaintiffs' claims.

As the district court pointed out, although the United States has an interest in deterring the alleged tortious conduct of Newvac and other U.S. third-party defendants, that interest is outweighed by Martinique's interest in adjudicating

---

inconvenienced by litigating third-party claims in Martinique did not impermissibly shift the burden to Plaintiffs but instead was simply one of many factors to be weighed in assessing the various private interests of the litigants. And, we agree with the district court that the relative ease of access to third-party evidence, unlike damages evidence, ultimately will be of concern only to Defendants.

17

actions that aim to redress injuries to its citizens.[12]  Moreover, any deterrent impact

on Newvac is not eliminated merely because damages are determined in

Martinique rather than in the United States.  Therefore, the United States' interest

in adjudicating Plaintiffs' claims does not justify the enormous commitment of

time—both of the court and of jurors—and other judicial resources that would be

consumed by the presentation of live testimony and documentary evidence in a

foreign language.  Finally, the district court found that although litigating third-

party claims in Martinique would be more convenient in a U.S. forum than in

Martinique, the burden of translation in Martinique with respect to these claims is

not as great as the burden of presenting French damages evidence in the United

States.  This is so because the Martinique court designated to hear Montreal

Convention claims does so in writing only and will not hear testimony.  Thus,

Defendants will not bear the burden of translating live testimony in Martinique as

both parties would in the United States.[13]

---

[12] Plaintiffs argue that Martinique has a state interest in ensuring that the rights of its citizens to their choice of forum under the Montreal Convention are respected.  They further argue that the United States has a significant interest in deterring corporate misconduct like that of Newvac, which continues to act as a contracting carrier under U.S. laws.  Again, while we acknowledge the competing public interests at work in this analysis, we do not believe the district court abused its discretion in crediting the undeniable interest of Martinique in redressing injuries to its citizens.

[13] We are not persuaded by Plaintiffs' argument that the district court erred in failing to consider the fact that Defendants made no argument that the congestion factor supports dismissal.  The failure of Defendants to make an argument on this issue is not fatal to their forum non conveniens argument if, as the district court determined, other factors clearly support a

18

In sum, the district court did not err in determining that the Montreal Convention does not preclude the use of forum non conveniens in U.S. courts nor did it abuse its discretion in dismissing Plaintiffs' claims on forum non conveniens grounds.

**AFFIRMED.**

---

dismissal.