**Steven PROPHET, et al., Plaintiffs**

v.

**INTERNATIONAL LIFESTYLES, INC., et al., Defendants.**

**Case No. 10–60152–CIV.**

United States District Court, S.D. Florida.

March 31, 2011.

Guy Millo Shir, Kahan & Associates, Boca Raton, FL, Brian Burke, Worcester, MA, for Plaintiffs.

Bruce Richard Marx, Marlow Connell Valerius Abrams Adler & Newman, Coral Gables, FL, for Defendants.

## OMNIBUS ORDER

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon Defendants International Lifestyle, Inc., Village Resorts, Ltd., Great Resorts, Ltd., and Bloody Bay Development, Ltd.'s ("Defendants") Motion to Dismiss for Forum Non Conveniens (D.E. 98) and Bloody Bay Development, Ltd.'s Motion to Dismiss for Lack of Subject Matter Jurisdiction (D.E. 100).

THE COURT has considered the Motions and the pertinent portions of the record and is otherwise fully advised in the premises.

### I. Background

This lawsuit arises from injuries Plaintiff Steven Prophet sustained in Negril, Jamaica, West Indies. The following facts are taken from Plaintiffs' Third Amended Complaint. (D.E. 94.)

Plaintiffs Steven Prophet and Carmen Prophet are a married couple and residents of Pennsylvania. Defendant International Lifestyles, Inc., ("ILI") is a corporation organized under the laws of Delaware with its principal place of business in Hollywood, Florida. ILI markets and advertises various hotel properties, including the Grand Lido Negril hotel and resort in Jamaica. Defendant Village Resorts, Ltd. ("Village Resorts") is a corporation organized under the laws of Jamaica with its principal place of business in Kingston, Jamaica, West Indies. Defendant Great Resorts, Ltd. ("Great Resorts") is a corporation organized under the laws of Jamaica with its principal place of business in Kingston, Jamaica, West Indies and is a wholly owned subsidiary of Village Resorts. Defendant Bloody Bay Hotel Development Corporation ("Bloody Bay") is a corporation organized under the laws of Jamaica with its principal place of business in Kingston, Jamaica, West Indies and is partially owned by Village Resorts. Bloody Bay owns the Grand Lido Negril hotel and resort.[1]

On October 31, 2011, Steven Prophet was injured by a defective power rack located in the fitness center of the Grand Lido Negril. On November 5, 2011, Plaintiffs filed their Third Amended Complaint, asserting claims of, *inter alia*, negligence, failure to exercise reasonable care, negligent failure to warn, failure to warn and misrepresentation under the Pennsylvania Unfair Trade Practices and Consumer Protection Law ("the UTPCPL"), 73 P.S. §§ 201–1—201–9.2, and Carmen Prophet's loss of Steven Prophet's consortium.

Defendants move to dismiss the Third Amended Complaint on *forum non conveniens* grounds. (D.E. 98.) Bloody Bay also moves to dismiss pursuant to Fed.R.Civ.P. ("Rule") 12(b)(2) for lack of personal jurisdiction. (D.E. 100.)

### II. Forum Non Conveniens

■ "The doctrine of *forum non conveniens* permits a court with venue to decline to exercise its jurisdiction when the

1. Since filing the Third Amended Complaint, Plaintiffs voluntarily dismissed Defendants Chi Hsin Impex, Inc., Body Solid, Ivanko Barbell, and First Fitness. (D.E. 224 & 227.)

parties' and the court's own convenience, as well as the relevant public and private interests, indicate the action should be tried in a different forum." *Pierre–Louis v. Newvac Corp.*, 584 F.3d 1052, 1056 (11th Cir.2009). "The *forum non conveniens* determination is left to the sound discretion of the trial court." *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 257, 102 S.Ct. 252, 70 L.Ed.2d 419 (1981). A defendant invoking *forum non conveniens* bears the burden in opposing the plaintiff's choice of forum. *Wilson v. Island Seas Invs., Ltd.,* 590 F.3d 1264, 1269 (11th Cir.2009) (citing *Sinochem Int'l Co. Ltd. v. Malaysia Int'l Shipping Corp.,* 549 U.S. 422, 430, 127 S.Ct. 1184, 167 L.Ed.2d 15 (2007)). A *forum non conveniens* dismissal is appropriate where:

> 1. the trial court finds that an adequate alternate forum exists which possesses jurisdiction over the whole case, including all of the parties;
>
> 2. the trial court finds that all relevant factors of private interest favor the alternate forum, weighing in the balance a strong presumption against disturbing plaintiffs' initial forum choice;
>
> 3. if the balance of private interests is at or near equipoise, the court further finds that factors of public interest tip the balance in favor of trial in the alternate forum; and
>
> 4. the trial judge ensures that plaintiffs can reinstate their suit in the alternate forum without undue inconvenience of prejudice.

*Wilson,* 590 F.3d at 1269 (citing *Aldana v. Del Monte Fresh Produce, N.A., Inc.,* 578 F.3d 1283, 1289—90 (11th Cir.2009)).

## A. Plaintiffs' Choice of Forum

■ At the outset, the Court will address Plaintiffs' argument that the undersigned should give their choice of forum great deference. Plaintiffs rely heavily on *SME Racks, Inc. v. Sistemas Mecanicos Para Electronica, S.A.,* 382 F.3d 1097 (11th Cir.2004) to argue that the Court can dismiss their case on *forum non conveniens* grounds only in the most extreme circumstances. The Supreme Court has rejected Plaintiffs' contention that their involvement somehow serves as an automatic bar to dismissal:

> Citizens or residents deserve somewhat more deference than foreign plaintiffs, but dismissal should not be automatically barred when a plaintiff has filed suit in his home forum. As always, if balance of convenience suggests trial in the chosen forum would be unnecessarily burdensome for the defendant or the court, dismissal is proper.

*Piper Aircraft Co.,* 454 U.S. at 255 n. 23, 102 S.Ct. 252.

Plaintiffs' reliance on *SME Racks* is further misplaced, because the facts of that case are inapplicable to those in the instant case. The plaintiff in *SME Racks* was a United States citizen who sued a Spanish company for breach of contract and various torts that allegedly occurred in Florida. *SME Racks,* 382 F.3d at 1099. The parties negotiated the underlying contract in Florida and Spain, and the alleged breach occurred in Florida. *Id.* Moreover, the Court in *SME Racks* made specific findings that witnesses with knowledge of the loss were located in Florida and that the Spanish defendants' representatives had traveled to Florida on several occasions to negotiate the contract. *Id.* Here, the injury occurred outside of the United States, and the relevant premises and facilities and witnesses with first hand knowledge concerning the same are located outside the United States.

The holding of *Miyoung Son v. Kerzner Int'l Resorts, Inc.,* 2008 WL 4186979 (S.D.Fla. Sept. 5, 2008) is more applicable to this case. In *Miyoung,* two United States citizens sued various defendants following an accident that occurred while they were guests of a resort in The Baha-

mas. Like the plaintiffs here, the plaintiffs in that case relied on *SME Racks* in opposing the defendants' motion to dismiss for *forum non conveniens. Miyoung,* 2008 WL 4186979 at *10. Applying the Eleventh Circuit's rationale in *SME Racks,* Judge Marra rejected the plaintiffs' arguments that their choice of forum should be given greater deference because they were United States citizens:

> While the Court begins with the proposition that Plaintiffs (both U.S. citizens) should not be ousted from a U.S. forum, the Court finds that the public interest factors also weigh heavily in favor of trial in The Bahamas. First, in *SME Racks,* the court made clear that the United States has a strong interest in providing a forum for its citizens' grievances against an allegedly predatory foreign business that actively solicited business and caused harm **within the home forum.** In *SME Racks,* a U.S. plaintiff brought an action against a Spanish company for breach of contract and various torts in Florida. The contract was negotiated and executed in Spain, but the alleged breach and torts allegedly occurred in Florida as the plaintiff claimed it received a shipment of defective goods in Florida. This case is distinguishable from *SME Racks,* because the harm did not occur in Florida (or even in the U.S.). Instead, Plaintiffs are suing (with one exception) Bahamian companies and individuals for conduct which occurred entirely within The Bahamas. **Unlike *SME Racks,* the presumption in favor of Plaintiffs' choice of forum here is not as strong because of the attenuated connection of this forum with the events giving rise to the claims.**

*Id.* (internal quotations and citations omitted) (emphasis added). Accordingly, in keeping with the holdings of *Piper* and *Miyoung,* the Court will not afford Plaintiffs' choice of forum great deference.

The Court will now address the four factors relevant to the *forum non conveniens* analysis.

## B. Adequate Alternative Forum

Defendants argue that the courts of Jamaica are adequate alternative fora. "Availability and adequacy warrant separate consideration." *Leon v. Millon Air, Inc.,* 251 F.3d 1305, 1311 (11th Cir.2001) (citations omitted). The Court discusses both separately.

### 1. Available Forum

 Defendants argue that the courts of Jamaica are available fora. The Court agrees. "An alternative forum is 'available' to the plaintiff when the foreign court can assert jurisdiction over the litigation sought to be transferred." *Id.* (citing *Piper Aircraft,* 454 U.S. at 254 n. 22, 102 S.Ct. 252). A defendant must demonstrate the forum "possesses jurisdiction over the whole case, including all of the parties." *Wilson,* 590 F.3d at 1269; *see also Aldana,* 578 F.3d at 1290 ("[A]n alternative forum is generally deemed available if the case and all of the parties come within that court's jurisdiction.").

The Defendants stipulate that "if Plaintiffs re-file this matter in a Jamaican court, [they] would agree to litigate in the Jamaican forum." (D.E. 98 at 15.) Defendants also cite the deposition testimony of John Givans, a Jamaican attorney, who confirms that Plaintiffs can seek redress through the Jamaican court system. Givans testifies that Jamaican courts have jurisdiction over Plaintiffs' action and that Plaintiffs can pursue a claim in Jamaica for damages for personal injury caused by negligence. (D.E. 99–7 ¶¶ 12–13.)

Plaintiffs do not contend that a Jamaican court lacks jurisdiction over their claims or that Defendants would otherwise be unamenable to litigating in Jamaica.

Therefore, based on the evidence Defendants submit of Jamaica's jurisdiction and their stipulation that they will defend an action in Jamaica, the Court concludes that Jamaica is an available forum.

## 2. Adequate Forum

 Defendants argue that the courts of Jamaica are adequate fora. The Court agrees. "In rare circumstances . . . where the remedy offered by the alternative forum is clearly unsatisfactory, the other forum may not be an adequate alternative." *Piper Aircraft*, 454 U.S. at 254 n. 22, 102 S.Ct. 252; *see also Aldana*, 578 F.3d at 1290 ("[W]e have observed that it is only in 'rare circumstances' where 'the remedy offered by the other forum is clearly unsatisfactory,' that the alternative forum may be regarded as inadequate."). "Thus, for example, dismissal would not be appropriate where the alternative forum does not permit litigation of the subject matter in dispute." *Piper Aircraft*, 454 U.S. at 254 n. 22, 102 S.Ct. 252. However, a forum is generally adequate so long as it is available. *Id.*; *Aldana*, 578 F.3d at 1290.

Defendants cite numerous cases holding that Jamaica is an adequate forum. *See, e.g., Proyectos Orchimex de Costa Rica, S.A. v. E.I. DuPont de Nemours & Co.*, 896 F.Supp. 1197, 1201 (M.D.Fla.1995) (noting that (1) Jamaica is a common law jurisdiction with a developed and independent court system, (2) Jamaican law provides a remedy to persons damaged by a defective product, (3) Jamaican law recognizes claims for negligence and breach of warranty, and (4) Jamaican law allows for the recovery of compensatory damages); *Seales v. Panamanian Aviation Co.*, 356 Fed.Appx. 461, 464 (2d Cir.2009) ("[W]e detect no abuse of discretion in the district court's conclusion that Jamaica is an ade-

quate forum."). Moreover, Defendants submit the affidavit of John Givans who testifies that Defendants may bring claims for breach of duty and negligence under Jamaica's Occupier's Liability Act and The English Common Law. (D.E. 99-7 ¶¶ 13-14.)

Plaintiffs' arguments regarding the inadequacy of the forum are unavailing. They first argue that Carmen Prophet would be unable to pursue a claim for loss of consortium under English law, thus Jamaica is an inadequate alternative forum. English law may be less favorable to Plaintiffs than American law because it does not recognize loss of consortium claims; however, this alone does not render Jamaica's remedy "clearly unsatisfactory" under *Piper. See, e.g., Bell v. British Telecom.*, 1995 WL 476684, at *2 (S.D.N.Y. Aug. 9, 1995) (the lack of recognition of loss of consortium claims does not render Scotland a clearly inadequate alternative). Moreover, Carmen Prophet would still be entitled to pursue a claim for damages incurred in caring for Steven Prophet. *Adams v. Merck & Co. Inc.*, 353 Fed.Appx. 960, 962-63 (5th Cir.2009) (affirming dismissal on *forum non conveniens* grounds and noting that English common law allowed for damages for losses incurred in caring for injured spouse and that loss of consortium was derivative cause of action that did not, standing alone, support maintaining an action in an inconvenient forum).

Plaintiffs next argue that they would not be able to pursue a claim under the UTPCPL in Jamaica and thus Jamaica is an inadequate forum. Plaintiffs, however, fail to state a claim under the UTPCPL. The UTPCPL applies to individuals who suffer ascertainable loss of money or property, but Plaintiffs have failed to allege this kind of loss in their Third Amended Complaint.[2] There is a "catchall" provi-

---

**2.** Section 201-9.2 of the UTPCPL provides in pertinent part that "(a) Any person who pur-

sion of the UTPCPL that allows a plaintiff to recover for fraudulent conduct [3] but the plaintiff must plead the fraudulent conduct with particularity. *See Hammer v. Nikol,* 659 A.2d 617, 619—20 (Pa.Cmwlth.1995) ("To be actionable under the catchall provision, however, the 'confusion or misunderstanding' created must be fraudulent.... Specifically to recover under the catchall provision, the elements of common law fraud must be proven."). Plaintiffs have failed to plead fraud with particularity. Specifically, Plaintiffs have not pled any fraudulent conduct on the part of Defendants with respect to their promotional advertising. Even assuming *arguendo* that Plaintiffs have stated a claim under the UTPCPL, the lack of a remedy for Steven Prophet's injuries under one statute does not render Jamaica incapable of offering any remedy, particularly in light of Steven Prophet's ability to pursue claims for breach of duty and negligence under both Jamaican and English law. *See Bell,* 1995 WL 476684, at *2; *Abiaad v. General Motors Corp.,* 538 F.Supp. 537, 540 (E.D.Pa.1982) ("Neither the briefs or other material supplied to the court by the parties ... is sufficient for us to determine with any certainty just what the law of products liability, negligence, and personal injury is in the United Arab Emirates. Nevertheless, it need not equal that of Pennsylvania in order for dismissal to be proper.") Moreover, Defendants have stipulated that they will not contest the propriety of Plaintiffs maintaining their claims under the UTPCPL in Jamaica. (D.E. 145 at 5); *See Tazoe v. Airbus*

*S.A.S.,* 631 F.3d 1321, 1335 (11th Cir.2011) (holding that defendants' stipulation that plaintiffs could pursue certain claims against them in alternative forum was sufficient to reinstate the suit in the alternative forum without undue inconvenience or prejudice). Thus, Plaintiffs arguments regarding their inability to bring a claim under the UTPCPL in Jamaica are simply not enough to render Jamaica an inadequate forum.

Plaintiffs cite the deposition testimony of Nicole Allen, a Jamaican attorney, to support their contention that as foreigners they would be required to post security for defendants' costs, which would make it too expensive for them to seek redress in Jamaican courts. (*See* D.E. 120–5 ¶ 8.) Plaintiffs' arguments are unpersuasive and speculative, because they fail to provide estimate how much they would have to pay. Moreover, Defendants have stipulated that they would waive non-resident costs if Plaintiffs re-file their case in Jamaica and Plaintiffs do not argue that non-resident costs are not waivable by the defense. (D.E. 145 at 5); *See Tazoe,* 631 F.3d at 1335.

■ Plaintiffs' final argument is that Jamaica is not an adequate forum because it is unlikely that a Jamaican attorney would pursue the action on a contingency fee basis. Plaintiffs once again cite Nicole Allen's testimony to support their argument. (D.E. 120–5 ¶ 9.) Allen admits that attorneys in Jamaica often enter into contingency fee contracts but fails to provide any basis for her opinion that a Jamaican

chases or leases goods or services **primarily for personal, family or household purposes** and thereby suffers any ascertainable loss of **money or property,** real or personal, as a result of the use or employment by any person of a method, act or practice declared unlawful by section 3 of this act, may bring a private action to recover actual damages or one hundred dollars ($100) whichever is

greater." 73 P.S. §§ 201–9.2 (emphasis added).

3. Pursuant to § 201–2(4)(xxi) of the UTPCPL, a plaintiff may have a cause of action if the defendant "[e]ngag[ed] in any other fraudulent or deceptive conduct which creates a likelihood of confusion or misunderstanding." 73 P.S. § 201–2(4)(xxi).

attorney would be unlikely to litigate Plaintiffs' case on a contingency basis. Allen's testimony is conclusory and therefore unpersuasive. Moreover, the lack of a contingent-fee system is not a determinative factor in the forum *non conveniens* analysis. *See Coakes v. Arabian Am. Oil Co.*, 831 F.2d 572, 575 (5th Cir.1987) (noting that "neither the Supreme Court nor any federal circuit has ever held that the lack of a contingent-fee system in a foreign forum is a controlling factor in a *forum non conveniens* case").

## C. Private Factors

 Courts consider the following factors in determining whether private factors weigh in favor of dismissal: (a) the relative ease of access to sources of proof; (b) the availability of compulsory process for attendance of the unwilling, and the cost of obtaining attendance of willing witnesses; (c) the possibility to view the premises, if a viewing would be appropriate to the action; and (d) all other practical problems that make trial of the case easy, expeditious, and inexpensive. *Gulf Oil Corp. v. Gilbert*, 330 U.S. 501, 67 S.Ct. 839, 843, 91 L.Ed. 1055 (1947).

Defendants argue that their lack of access to Steven Prophet's medical records and their lack of power to compel testimony from the Jamaican doctors, nurses and EMT professionals who provided him medical care mandates dismissal in favor of litigation in Jamaica. Plaintiffs contend that most of the testimony and evidence that Defendants seek are not essential to the case and that even if the testimony and evidence is essential, Defendants could present videotaped testimony and introduce Steven Prophet's medical records by stipulation or summary.

The Court begins the private interest analysis by assessing the elements of Plaintiffs' claims and considering the evidence required to prove and disprove each

element. *See Ford v. Brown*, 319 F.3d 1302, 1308 (11th Cir.2003) ("A correct private interest analysis begins with the elements of the plaintiff's causes of action ... The court must then consider the necessary evidence required to prove and disprove each element."). In the instant case, Plaintiffs concede that "a large part of [Steven Prophet]'s claim for damages sounds in the [Defendants'] failure to either take more reasonable care of [Steven Prophet] when he was injured or to warn him before he visited Grand Lido Negril about the complete lack of adequate facilities in the resort area in the event that he was seriously injured." (D.E. 112 at 4.) Accordingly, the issues presented necessarily involve the availability, type, quality and other characteristics of the hospitals and Emergency Medical Service ("EMS") system in the Negril area. Thus, the testimony of individuals, such as health care providers, EMS staff, and municipal government officials are essential to this case.

Defendants have established that the courts in Jamaica have subpoena power over individuals and documentary evidence located in Jamaica. (*See* D.E. 99–7 ¶ 8.) Additionally, many of Defendants' prospective witnesses are in Jamaica and outside the compulsory process of this Court. *See Morse v. Sun Int'l Hotels, Ltd.*, 2001 WL 34874967, at *3 (S.D.Fla. Feb. 26, 2001). Even assuming these foreign witnesses would be willing to testify in the United States, the costs associated with obtaining their testimony would be significant. *See Callasso v. Morton & Co.*, 324 F.Supp.2d 1320, 1331 (S.D.Fla.2004) (holding that the practicalities and expenses associated with litigation favored Nicaragua as the forum).

Plaintiffs argue that videotaped depositions and summaries of Steven Prophet's Jamaican medical records are sufficient. The Court disagrees. Given the nature of the claims, the absence of live testimony

and actual evidence would be highly prejudicial to Defendants. *Rivas v. Ford Motor Co.,* 2004 WL 1247018, at *9 (M.D.Fla. Apr. 19, 2004) ("[T]he relative ability of the forum to compel the attendance of significant unwilling witnesses at the trial often is considered the most important factor because the presentation of live testimony is essential to a fair trial."); *Ford,* 319 F.3d at 1308 ("Perhaps the most important private interest is ... access to evidence."). Moreover, even if prejudice was not a consideration, the foreign location of key witnesses would inherently reduce Defendants' control over them. *J.C. Renfroe & Sons, Inc. v. Renfroe Japan Co.,* 515 F.Supp.2d 1258 (M.D.Fla.2007) (holding that private interest factors weighed heavily in favor of dismissal when it was clear that defendants lacked the contractual control over foreign witnesses required to make them appear for depositions).

Plaintiffs next contend that the expense they would incur in bringing their American expert witnesses to Jamaica for the trial outweighs Defendants' interests in litigating the action in Jamaica. The Court disagrees. Plaintiffs fail to explain why the expenses to which they will be exposed from litigating in Jamaica outweigh the expenses to which Defendants would be exposed if required to litigate in the United States. Moreover, many of the types of expenses Plaintiffs identify would be incurred in any event due to Plaintiffs' decision to sue in the Southern District of Florida, which has a very attenuated relationship to this case. But most important, courts around the country have favored dismissal on *forum non conveniens* grounds of cases that require application of a foreign country's laws regarding the appropriate standards of care. *See, e.g., Chierchia v. Treasure Cay Servs.,* 738 F.Supp. 1386, 1389 (S.D.Fla.1990) (dismissing on *forum non conveniens* grounds when Bahamian tort law governed plaintiff's claim of negligence arising out of accident in Bahamian resort); *Loya v. Starwood Hotels & Resorts Worldwide, Inc.,* 583 F.3d 656 (9th Cir.2009) (affirming *forum non conveniens* dismissal in favor of litigation in Mexico because Mexican law applies to the applicable standard of care); *In re Union Carbide Corp. Gas Plant Disaster at Bhopal, India in December, 1984,* 634 F.Supp. 842, 864 (S.D.N.Y.1986) ("It would be sadly paternalistic, if not misguided, of this Court to attempt to evaluate the regulations and standards imposed in another country."); *Ledingham v. Parke–Davis Div. of Warner–Lambert Co.,* 628 F.Supp. 1447, 1452 (E.D.N.Y 1986) ("[I]t would be manifestly unfair to defendants, who claim to have complied with Canadian regulations, if this Court were to set a higher standard of care than is required by the Canadian government."). In other words, any interest Plaintiffs have in presenting their expert witnesses in the United States is outweighed by the Defendants' interest in convenient access to the testimony of Jamaican witnesses who can attest to the standard of care in their country.[4]

A fair consideration and balancing of Defendants' private interests against those of Plaintiffs mandates dismissal of this action in favor of litigation in Jamaica.

**D. Public Factors**

 The public factors that a court considers include "(1) the administrative

---

4. Defendants also assert that there is a possibility that a court-ordered viewing of the accident scene in Jamaica will be necessary. The undersigned notes that a series of photographs of the scene may be a sufficient substitute but an in-person viewing may be deemed necessary. Given such uncertainty concerning the need for a viewing, the undersigned finds that this factor also supports dismissal but accords little weight to it.

difficulties flowing from court congestion; (2) the local interest in having localized controversies resolved at home; (3) the interest in having the trial of a diversity case in a forum that is familiar with the law governing the action; and (4) the unfairness of burdening citizens in an unrelated forum with jury duty." *Perez–Lang v. Corporacion de Hoteles, S.A.,* 575 F.Supp.2d 1345, 1348, n. 4 (S.D.Fla.2008)

 The first public interest factor involves the administrative difficulties that flow from court congestion. Although the Southern District of Florida is one of the busiest dockets in the United States, this public interest factor is afforded little weight in the *forum non conveniens* analysis. *Morse,* 2001 WL 34874967, at \*6. Accordingly, the Court finds that this factor has little significance.

Second, the public interest in litigating this action in the forum where the controversy arose weighs in favor of dismissal. As already noted, the controversy is local to Jamaica because the accident occurred in that forum. Defendants correctly assert that as a country with an economy that is heavily dependant on tourism, Jamaica has a substantial interest in addressing the issues presented in the instant action. These issue include, *inter alia,* the safety of guests at a major Jamaican resort and the operation of Jamaica's hospitals and emergency medical care services. *Perez–Lang,* 575 F.Supp.2d at 1352 (noting the strong public interest in resolving localized controversies involving issues of local concern in the home forum). In contrast, Florida's interest is minimal.

Third, there is a strong public interest in litigating a diversity case in a forum that is familiar with the law governing the relevant claims. Plaintiffs concede that a majority of their claims are subject to Jamaican law. (*See* D.E. 112 at 20.) Thus, although Plaintiffs are correct that United States federal courts routinely apply for-

eign law, the fact that Jamaican law is applicable to this case is an important public interest factor that warrants dismissal in favor of litigation in Jamaica. *Morse,* 2001 WL 34874967 (noting that the need to apply Bahamian law was a factor favoring dismissal).

Finally, there is a strong public interest in not burdening Florida citizens with jury duty for a trial in an unrelated forum. A South Florida jury would have little interest in litigation involving a Pennsylvania resident who was injured while using exercise equipment located in a Jamaican resort. While Plaintiffs may be correct in their contention that their United States citizenship allows them to bring their action in any federal court, the public interest of not burdening Florida citizens with jury duty outweighs Plaintiffs' interest in bringing the action in South Florida. *Sibaja v. Dow Chemical Co.,* 757 F.2d 1215, 1218 (11th Cir.1985) (holding that jury duty is a burden that should not to be imposed upon the people of a community who have no relation to the parties or the place where the injuries occurred).

In sum, the public interest factors weigh heavily in favor of dismissal.

### E. Reinstatement of Suit Jamaica

 The final factor the Court must consider in the *forum non conveniens* analysis is whether or not that Plaintiffs can reinstate their suit in Jamaica without undue inconvenience or prejudice. *See Wilson,* 590 F.3d at 1269. Defendants have stipulated that they will submit to suit in Jamaica. In light of this stipulation, Plaintiffs have not provided sufficient basis for a finding that they would suffer great inconvenience or undue prejudice in a Jamaican court. *See Chierchia,* 738 F.Supp. at 1389.

### III. Personal Jurisdiction

■ Bloody Bay moves to dismiss the Third Amended Complaint for lack of personal jurisdiction. Generally, "[a] court must conduct a two-part inquiry when deciding the issue of personal jurisdiction." *See Future Tech. Today, Inc. v. OSF Healthcare Sys.*, 218 F.3d 1247, 1249 (11th Cir.2000). "First, the court must determine whether the applicable state statute governing personal jurisdiction is satisfied." *Id.* Second, if the statute is satisfied, the court must inquire as to whether the exercise of personal jurisdiction satisfies constitutional due process concerns. *See Id.* "In the context of a motion to dismiss for lack of personal jurisdiction in which no evidentiary hearing is held, the plaintiff bears the burden of establishing a *prima facie* case of jurisdiction over the movant, non resident defendant." *Morris v. SSE, Inc.*, 843 F.2d 489, 492 (11th Cir. 1988); *see also Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1268—69 (11th Cir. 2002). "Where, as here, the defendant[s] challenge jurisdiction by submitting affidavit evidence in support of [their] position, the burden traditionally shifts back to the plaintiff to produce evidence supporting jurisdiction." *Diamond Crystal Brands, Inc. v. Food Movers Int'l, Inc.*, 593 F.3d 1249, 1257 (11th Cir.2010) (citations omitted). "[W]here the evidence presented by the parties' affidavits and deposition testimony conflicts, the court must construe all reasonable inferences in favor of the non-movant plaintiff." *Morris*, 843 F.2d at 492.

Plaintiffs argue that Bloody Bay is subject to personal jurisdiction under the general jurisdiction provision of the Florida long-arm statute because Bloody Bay is a parent corporation conducting business through a Florida-based subsidiary and because Bloody Bay has otherwise conducted business in Florida. *See* Fla. Stat. § 48.193(2) (2009). The general jurisdiction provision of the statute states:

> A defendant who is engaged in substantial and not isolated activity within this state, whether such activity is wholly interstate, intrastate, or otherwise, is subject to the jurisdiction of the courts of this state, whether or not the claim arises from that activity.

Fla. Stat. § 48.193(2). "The 'substantial and not isolated activity' requirement of the long-arm statute has been recognized by Florida courts as the functional equivalent of the continuous and systematic contact requirement for general jurisdiction under the Fourteenth Amendment Due Process Clause as discussed in *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 413–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)." [5] *Meier*, 288 F.3d at 1269 n. 6 (*citing Woods v. Nova Cos. Belize Ltd.*, 739 So.2d 617, 620 (Fla. 4th DCA 1999)).

Plaintiffs fail to establish a *prima facie* case of general jurisdiction under the long-arm statute. In support of its Motion to Dismiss, Bloody Bay relies on the November 16, 2010 Affidavit of Stuart Fisher, the Director of Bloody Bay. Fisher's affidavit establishes that Bloody Bay was incorpo-

---

**5.** "The continuous and systematic general business contacts sufficient to confer general jurisdiction present a 'much higher threshold' than those contacts necessary to support specific jurisdiction under section 48.193(1)." *Trs. of Columbia Univ. v. Ocean World, S.A.*, 12 So.3d 788, 792 (Fla. 4th DCA 2009) (citing *Seabra v. Int'l Specialty Imports, Inc.*, 869 So.2d 732, 734 (Fla. 4th DCA 2004)). "One

reason for requiring a more rigorous showing to establish general jurisdiction is because jurisdiction under section 48.193(2) does not require that a lawsuit's cause of action arise from activity within Florida, or that there be any connection between the claim and the defendant's Florida activities." *Id.* (citations omitted).

rated for the sole purpose of developing the land on which the Grand Negril resort was ultimately built and that Bloody Bay had not engaged in any activity in Florida that would subject it to personal jurisdiction. (D.E. 101–5 ¶¶ 5 & 13—20.) Accordingly, Bloody Bay has met its initial burden of establishing that it was not subject to jurisdiction in Florida, and the burden shifts to Plaintiffs to establish that Bloody Bay was indeed subject to personal jurisdiction.

Plaintiffs fail to rebut the evidence furnished by Bloody Bay. They merely speculate that Bloody Bay is the parent company of a Florida subsidiary and that Bloody Bay has conducted business in Florida directly or through agents.[6] Realizing that they have not rebutted any of Defendants' evidence, Plaintiffs argue, in the alternative, that the Court should afford them additional time to conduct jurisdictional discovery. However, as Defendants correctly point out, Plaintiffs had the opportunity to conduct jurisdictional discovery beginning July 16, 2010 when Bloody Bay acknowledged service of Plaintiffs' complaint. Moreover, Plaintiffs had notice of Bloody Bay's position regarding personal jurisdiction as early as October 22, 2010 when Bloody Bay filed its Motion to Dismiss the Second Amended Complaint for lack of personal jurisdiction. (D.E. 71.)[7] Plaintiffs evidently failed to conduct enough discovery to establish personal jurisdiction.

### IV. Conclusion

For the foregoing reasons, it is hereby ORDERED AND ADJUDGED that Defendants' Motion to Dismiss for Forum Non Conveniens (D.E. 98) and Bloody Bay Development Ltd's Motion to Dismiss for Lack of Personal Jurisdiction. (D.E. 100) are GRANTED. This action is DISMISSED with directions to Plaintiff to refile this action in Jamaica.

---

**6.** Plaintiffs submit the affidavit of their counsel, Brian Burke, who attests to facts that are wholly irrelevant to the issue of personal jurisdiction. (*See* D.E. 120–1.) Plaintiffs also submit a deposition of Stuart Fisher, filed in *Sans Souci, Ltd. v. International Lifestyles, Inc.*, 04–61266–CIV–Ungaro–Benages. (*See*

D.E. 120–3.) The deposition is also irrelevant and in no way rebuts Stuart Fisher's testimony in this case.

**7.** The Court denied the Motion as moot after Plaintiffs filed their Third Amended Complaint. (D.E. 92.)