BOEHRINGER–MANNHEIM DIAGNOS-
TICS, INC., f/k/a Hycel, Inc.,
Plaintiff-Appellee,

v.

PAN AMERICAN WORLD AIRWAYS,
INC., Defendant-Appellant.

No. 81–2519.

United States Court of Appeals,
Fifth Circuit.

July 18, 1984.

Rehearing Denied Aug. 21, 1984.

Lawrence Mentz, Condon & Forsyth, Stephen J. Fearon, New York City, for defendant-appellant.

Alden D. Holford, Houston, Tex., for plaintiff-appellee.

Before TUTTLE,* POLITZ and GARWOOD, Circuit Judges.

POLITZ, Circuit Judge:

We deferred resolution of this case pending the Supreme Court's decision in *Trans World Airline, Inc. v. Franklin Mint Corp.*, — U.S. ——, 104 S.Ct. 1776, 80 L.Ed.2d 273 (1984). That decision disposes of the principal issue before us, the value of gold for purposes of the cargo liability limit of the "Warsaw Convention." [1] In *Franklin Mint* the Supreme Court concluded that the Convention's cargo liability limit was not rendered unenforceable in the United States by virtue of the 1978 repeal of the Par Value Modification Act. The Court determined that the limitation of $9.07 per pound, CAB Order 74–1–16, 14 C.F.R. § 221.176 (1979) [2] was still in effect.

■ The facts are succinctly stated in the district court's opinion, *Boehringer-Mannheim Diagnostics, Inc. v. Pan American World Airways*, 531 F.Supp. 344 (S.D. Tex.1981). The district court erred in concluding that the air carrier's liability limit under Article 22 of the Convention [3] was to

---

* Circuit Judge of the Eleventh Circuit, sitting by designation.

1. Convention for the Unification of Certain Rules Relating to International Transportation by Air, October 12, 1929, 49 Stat. 3000, T.S. No. 876 (1934), reprinted at 49 U.S.C. § 1502 note.

2. Restated in CAB Order 78–8–10, 43 Fed.Reg. 35971, 35972 (1978).

3. The Convention was drafted at international conferences in Paris in 1925, and in Warsaw in 1929. The United States became a signatory in 1934. More than 120 nations now adhere to it. The Convention creates internationally uniform rules governing the air carriage of passengers, baggage, and cargo. Under Article 18 carriers are presumptively liable for the loss of cargo. Article 22 sets a limit on carrier liability:

"(2) In the transportation of checked baggage and of goods, the liability of the carrier shall be limited to a sum of 250 francs per kilogram, unless the consignor has made, at the time when the package was handed over to the carrier, a special declaration of the value at delivery and has paid a supplementary sum if the case so requires....

\*      \*      \*      \*      \*      \*

"(4) The sums mentioned above shall be deemed to refer to the French franc consisting of 65½ milligrams of gold at the standard of fineness of nine hundred thousandths. These sums may be converted into any national currency in round figures." Article 22, reprinted (in English translation) at 49 U.S.C. § 1502 note.

In the United States the task of converting the Convention's liability limit into "any national

be determined by reference to the free market price of gold. The Supreme Court, in its intervening decision, teaches otherwise.

■ The "official" price of gold at the time of the 1978 loss at issue was $42.22 per ounce. The liability limit of $9.07 per pound was properly claimed by Pan American Airways. Boehringer-Mannheim proved damages totaling $34,054.64. However, because the total weight of the cargo was 1,860 pounds, the maximum recovery under the Convention and tariff restrictions is $16,870.20. The judgment of the district court is reversed and judgment for $16,870.20 is to be rendered.

We are also asked to determine the correctness of the lower court's award of attorneys' fees under Tex.Rev.Civ.Stat.Ann. art. 2226. Boehringer-Mannheim sought recovery under the Convention and also invoked diversity jurisdiction for a negligence action under Texas law. The trial court found liability under both claims and awarded attorneys' fees as provided by Texas law.

■ The essential inquiry is whether the Convention provides the exclusive liability remedy for international air carriers by providing an independent cause of action, thereby preempting state law, or whether it merely limits the amount of recovery for a cause of action otherwise provided by state or federal law. We have not previously addressed this question. We hold today that the Warsaw Convention creates the cause of action and is the exclusive remedy. Our colleagues of the Second and Ninth Circuits previously have so concluded, *Benjamins v. British European Airways*, 572 F.2d 913 (2d Cir.1978); *In re Mexico City Air Crash of October 31, 1979*, 708 F.2d 400 (9th Cir.1983), reversing positions they had earlier taken.

The Warsaw Convention, as an accepted treaty, is binding. *Dalton v. Delta Air-*

*lines, Inc.*, 570 F.2d 1244 (5th Cir.1978). We must determine its meaning under previously announced rubrics:

[I]n construing [a] treaty, as other contracts, we give consideration to the intent of the parties so as to carry out their manifest purpose.... We proceed also under the admonition that where a treaty admits of two constructions, one restrictive of and the other favorable to the rights claimed under it, the latter is to be preferred.

*Board of Com'rs v. Aerolineas Peruana-sa, S.A.*, 307 F.2d 802, 806-07 (5th Cir. 1962). In examining the minutes and documents from the meetings resulting in the Convention, we find the delegates were concerned with creating a uniform law to govern air crashes, dehors national law save for questions of standing, the effects of contributory negligence and procedural matters. *See* Convention Articles 21, 24(2) and 28(2).

The Convention delegates voiced concerns about the possibility of major air crash cases being decided by courts of nations whose legal systems trailed developments in many or most other nations. To avoid the "prospect of a junglelike chaos," *Reed v. Wiser*, 555 F.2d 1079, 1092 (2d Cir.1977), the Convention set forth rules for universal application. "While it is not literally inconsistent with this universal applicability to insist that a would-be plaintiff first find an appropriate cause of action in the domestic law of a signatory authorized by Article 28 to hear his claim, it is inconsistent with its spirit." *Benjamins* at 917-18.

Article 24 of the Convention is frequently cited in the debate whether the Convention created a cause of action. It provides:

(1) In the cases covered by articles 18 and 19 any action for damages, however founded, can only be brought subject to

currency" falls within rule-making authority which was, for many years including those at issue here, delegated to the CAB under the Federal Aviation Act of 1958 (FAA), 49 U.S.C. § 1301 *et seq.* International air carriers were

required to file tariffs with the CAB specifying "in terms of lawful money of the United States" the rates and conditions of their services, including the cargo liability limit that they claimed.

the conditions and limits set out in this convention.

(2) In the cases covered by article 17 the provisions of the preceding paragraph shall also apply, without prejudice to the questions as to who are the persons who have the right to bring suit and what are their respective rights.

One delegate considered this provision to be "the very substance of the Convention, because it excludes recourse to common law" for a cause of action against the carrier. *Minutes of the Second International Conference on Private Aeronautical Law, October, 1929, Warsaw* 213 (R. Horner & D. Legrez trans. 1975) (statement of British delegate Sir Alfred Dennis).

Finally the language of the treaty itself makes an affirmative statement of liability which we interpret as creating an independent cause of action:

Article 18.

(1) Le transporteur est responsable du dommage survenu en cas de destruction, perte ou avarie de bagages enregistres ou de marchandises lorsque l'événement qui a cause le dommage s'est produit pendant le transport aérien.

49 United States Statutes at Large 3000, 3005 (1934).[4]

■ Having concluded that the Warsaw Convention creates the controlling cause of action, we further conclude that it preempts state law in the areas covered. The Constitution provides that "all Treaties made ... under the Authority of the United States, shall be the supreme Law of the Land." U.S. Const. art. VI cl. 2. Any state law in conflict with a treaty is invalid. *See Ray v. Atlantic Richfield Co.,* 435 U.S. 151, 98 S.Ct. 988, 55 L.Ed.2d 179 (1978). In addition, a state law must yield if the Congress preempts the field. Congress may preempt by expressing its intent to sup-

plant state law or it may regulate a subject so pervasively that it completely occupies the field. The Convention has not expressly preempted state law. We must therefore examine the pervasiveness of the regulation for de facto preemption.

■ The test for non-express preemption is whether: (1) the area requires national uniformity, *Florida Lime & Avocado Growers v. Paul,* 373 U.S. 132, 83 S.Ct. 1210, 10 L.Ed.2d 248 (1963), (2) there is evidence of congressional design to preempt the field, *Jones v. Rath Packing Co.,* 430 U.S. 519, 97 S.Ct. 1305, 51 L.Ed.2d 604 (1977), or (3) the state statute actually and directly conflicts with the federal provision. An obvious major purpose of the Warsaw Convention was to secure uniformity of liability for air carriers. *Block v. Compagnie Nationale Air France,* 386 F.2d 323 (5th Cir.1967). That uniformity has both an international and intranational application. The law of Texas, as relates to the cause of action, is preempted. Concomitantly, the law of Texas which provides for attorneys' fees in claims for lost or damaged freight is likewise preempted. There is no basis for applying Tex.Rev.Civ.Stat. Ann. art. 2226.

■ Having ruled out the allowance of attorneys' fees under Texas law, we consider whether those fees are allowable under federal law. We conclude that they are not. In *Alyeska Pipeline Serv. v. Wilderness Soc.,* 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), the Supreme Court referred to the "American Rule" and observed: "In the United States, the prevailing litigant is ordinarily not entitled to collect a reasonable attorneys' fee from the loser." Id. at 247, 95 S.Ct. at 1616. An exception noted is "when the losing party has 'acted in bad faith, vexatiously, wan-

---

**4.** In interpreting the terms employed in the Convention, the French legal meaning governs. *Block v. Compagnie Nationale Air France,* 386 F.2d 323 (5th Cir.1967).

The official translation declares:

Article 18

(1) The carrier shall be liable for damage sustained in the event of the destruction or

loss of, or of damage to, any checked baggage or any goods, if the occurrence which caused the damage so sustained took place during the transportation by air.

49 United States Statutes at Large 3000, 3019 (1934).

tonly, or for oppressive reasons.'" Id. at 258–59, 95 S.Ct. at 1622, *quoting F.D. Rich Co., Inc. v. United States ex rel. Industrial Lumber Co., Inc.,* 417 U.S. 116, 129, 94 S.Ct. 2157, 2165, 40 L.Ed.2d 703 (1974). There is nothing in the record before us to support an award of attorneys' fees under the American Rule.

 Finally, the trial court, applying Texas law, awarded prejudgment interest. Although the Texas law is preempted, we have previously held that prejudgment interest may be awarded under the Warsaw Convention itself. *Domangue v. Eastern Airlines, Inc.,* 722 F.2d 256 (5th Cir.1984).

The judgment of the district court is reversed as it relates to the amount of recovery and the award of attorneys' fees. It is affirmed as to the allowance of prejudgment interest.

REVERSED and REMANDED for entry of a judgment consistent herewith.