# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

August 26, 2024

Lyle W. Cayce
Clerk

No. 23-30632

———————————

Susan Hardy,

*Plaintiff—Appellant*,

*versus*

Scandinavian Airlines System, *also known as* SAS,
*doing business as* Scandinavian Airlines of North America,
Incorporated,

*Defendant—Appellee*.

———————————————————————

Appeal from the United States District Court
for the Eastern District of Louisiana
USDC No. 2:21-CV-1591

———————————————————————

Before Smith, Wiener, and Douglas, *Circuit Judges*.

Jerry E. Smith, *Circuit Judge*:

Susan Hardy flew from Newark, New Jersey, to Oslo, Norway, to visit her daughter. As she stepped off the plane, she fell and fractured her leg. Hardy sued the airline, Scandinavian Airlines System ("SAS"), in the Eastern District of Louisiana, contending that Article 33 of the Montreal Convention created both subject matter jurisdiction over the injury claim and

personal jurisdiction over SAS.[1]  The district court dismissed, concluding that the Convention grants only subject matter jurisdiction.  Further, it rejected Hardy's claim that SAS's waiver of service created personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2).

This court has never answered whether the Montreal Convention independently creates personal jurisdiction over a defendant airline.  On this matter of first impression, we hold that it does not.  Article 33, despite being titled "Jurisdiction," uses "may be brought" and "must be brought" language, which is wording indicative of venue prescriptions.  And venue prescriptions do not establish personal jurisdiction without language also authorizing the service of process.  *BNSF Ry. Co. v. Tyrrell*, 581 U.S. 402, 408–10 (2017).  Because the Montreal Convention lacks that language, it does not create personal jurisdiction.

We depart from the district court, however, on Hardy's Rule 4(k)(2) claim.  The district court incorrectly considered whether SAS had minimum contacts with Louisiana.  Instead, it should have analyzed SAS's contacts with the United States writ large.  Per that analysis, we conclude that SAS has sufficient minimum contacts with the U.S. for the district court *à quo* to exercise personal jurisdiction over it for Hardy's claim.  Therefore, we reverse and remand.

I.

Hardy lives in Mandeville, Louisiana, but her daughter and son-in-law live in Oslo.  She and her husband flew there for a visit.  Hardy purchased round-trip tickets from New Orleans to Newark on United Airlines and sepa-

---

[1] *See* Convention for the Unification of Certain Rules for International Carriage by Air, art. 33, May 28, 1999, S. Treaty Doc. 106-45, 1999 WL 33292734 (the "Montreal Convention").

rately bought round-trip tickets from Newark to Oslo on SAS.[2]

As she disembarked the plane in Oslo, Hardy's foot dropped an unexpected five to six inches further than normal to the jet bridge, and she fell hard, breaking her right leg. She spent several days in a hospital in Oslo before recovering at her daughter's home. Later, she returned to Mandeville and continued to receive treatment.

Hardy sued SAS in the Eastern District of Louisiana, alleging strict liability under the Montreal Convention.[3] After the parties ironed out issues regarding Hardy's initial service on SAS's American subsidiary, SAS waived service per Federal Rule of Civil Procedure 4(d). Shortly thereafter, SAS moved to dismiss for want of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2). At no place in that motion, or elsewhere, did SAS name a district within the United States where the court could exercise personal jurisdiction over it.

The court granted SAS's motion and dismissed Hardy's complaint without prejudice. First, it rejected Hardy's claim that the Montreal Convention's Article 33 created personal jurisdiction over SAS. Recognizing that our court had yet to address that question, it found the Second Circuit's analysis in *National Union* persuasive and adopted it.[4] Second, the court rejected Hardy's contention that SAS's waiver of service brought SAS within the district court's personal jurisdiction by way of Federal Rule of

---

[2] SAS is a consortium of corporations headquartered in Stockholm and organized under the laws of Denmark, Norway, and Sweden.

[3] *See* Montreal Convention, arts. 17, 20, 21 (creating strict liability up to 100,000 SDR (~$134,000) where the injury occurs "in the course of any of the operations of embarking or disembarking" and the injured does not cause or contribute to the injury).

[4] *See Nat'l Union Fire Ins. Co. of Pittsburgh v. UPS Supply Chain Sols., Inc.*, 74 F.4th 66 (2d Cir. 2023), *cert. denied*, 144 S. Ct. 559 (2024).

No. 23-30632

Civil Procedure 4(k)(2).  Specifically, it found that Hardy had failed to relate her claim to SAS's forum-specific actions because the alleged negligent conduct occurred in Oslo, not Louisiana.  Buttressing its analysis, the court also concluded that the exercise of personal jurisdiction here would not be "fair and reasonable" because "the connection between her cause of action and Defendant's forum-related activities" was "too attenuated."  Hardy appeals the dismissal.

## II.

We review questions of personal jurisdiction *de novo*.[5]  The party asserting jurisdiction "has the burden to make a *prima facie* showing that personal jurisdiction is proper."[6]

## III.

Hardy presents three claims on appeal: first, that the Montreal Convention creates both personal and subject matter jurisdiction; second, that SAS waived any objection to personal jurisdiction by incorporating the Montreal Convention into its contract of carriage; and third, that SAS is subject to personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2) because it waived service.  We reject the first and the second, but we agree with the third.

## A.

Whether the Montreal Convention independently creates personal jurisdiction over a defendant is a question of first impression in this circuit.

---

[5] *E. Concrete Materials, Inc. v. ACE Am. Ins. Co.*, 948 F.3d 289, 295 (5th Cir. 2020) (quoting *In re Chinese-Manufactured Drywall Prods. Liab. Litig.*, 742 F.3d 576, 584 (5th Cir. 2014)).

[6] *Id.* (quoting *Monkton Ins. Servs., Ltd. v. Ritter*, 768 F.3d 429, 431 (5th Cir. 2014)).

No. 23-30632

We conclude that the Montreal Convention's Article 33 does not create personal jurisdiction, joining the Second Circuit, though with a different rationale.

The Montreal Convention is a multilateral treaty signed in 1999 and adopted and ratified by the U.S. in 2003. The Convention "supersede[s] the Warsaw Convention" of 1929[7] and, as amended, it "represents a vast improvement over the liability regime established" thereunder.[8] *Inter alia*, it "provides for U.S. jurisdiction for most claims brought on behalf of U.S. passengers" by means of a new subsection of the Warsaw Convention's jurisdictional Article.[9] The parties' main dispute is whether that language of "jurisdiction" means personal jurisdiction as it is understood in American courts.

Hardy submits that the text of, the Letter of Submittal for, and the Senate Committee's Report on the Montreal Convention all "provide[] the clear and unambiguous intent of the United States" to create personal jurisdiction over SAS. In her telling, the district court erred in two key ways. First, interpretation of Article 33(2) cannot rely on prior interpretations of the Warsaw Convention because the Warsaw Convention lacked any analogue to Article 33(2). Second, the factual dissimilarities between her case, dealing with a personal injury, and *National Union*, dealing with cargo damage, make the Second Circuit's analysis inapplicable. Hardy contends that the parties to the treaty knew and accepted that it would open their national

---

[7] *See* Convention for the Unification of Certain Rules Relating to International Carriage by Air, Oct. 12, 1929, 49 Stat. 3000, 137 L.N.T.S. 11 (the "Warsaw Convention").

[8] Montreal Convention, Letter of Transmittal of President William J. Clinton, 1999 WL 33292734, at *2.

[9] *Id.*; *see also* Letter of Submittal of Deputy Sec'y of State Strobe Talbott, 1999 WL 33292734, at *8, *23 (comparing Art. 33(2) to Warsaw Convention Art. 28).

5

carriers to liability in the United States. So, the district court improperly interpreted the treaty.

SAS retorts that the Second Circuit correctly determined that Article 33 "speak[s] only to treaty jurisdiction as a form of subject-matter jurisdiction, not personal jurisdiction." *Nat'l Union*, 74 F.4th at 73. So, the factual dissimilarities between Hardy's and National Union's cases are irrelevant. Further, SAS cites a litany of Article 33 cases either focusing on subject matter jurisdiction or even expressly concluding that there is no personal jurisdiction. Finally, SAS defends the applicability of Warsaw Convention precedent because we routinely rely on caselaw interpreting the Warsaw Convention "to interpret corresponding provisions of the Montreal Convention."[10]

We agree with our prior panels that interpretation of the Warsaw Convention can and should inform our interpretation of the Montreal Convention.[11] But the parties to the Montreal Convention added Article 33(2) because the Warsaw Convention lacked something. Therefore, to understand what Article 33(2) does, we must turn to the traditional tools of treaty interpretation.

### 1. Interpretation of Article 33(2)

We construe treaties "more liberally than private agreements." *Potter v. Delta Air Lines, Inc.*, 98 F.3d 881, 885 (5th Cir. 1996) (quoting *Air France*

---

[10] *Bridgeman v. United Cont'l Holdings, Inc.*, 552 F. App'x 294, 297 n.1 (5th Cir. 2013)). Separately, SAS contends that treaties may not create personal jurisdiction. But the Constitution is merely a floor, not a ceiling, so we reject that position.

[11] *See id.*; *Bassam v. Am. Airlines*, 287 F. App'x 309, 313 n.5 (5th Cir. 2008) (per curiam) ("Although the Montreal Convention completely replaced the prior Warsaw Convention, courts interpreting the Montreal Convention rely on cases interpreting similar provisions of the Warsaw Convention." (cleaned up)).

*v. Saks*, 470 U.S. 392, 396 (1985)) (cleaned up). "We begin with the text of the treaty and the context in which the words are used." *Volkswagenwerk Aktiengesellschaft v. Schlunk*, 486 U.S. 694, 699 (1988) (cleaned up). Then, if necessary "to ascertain their meaning[,] we may look beyond the written words to the history of the treaty, the negotiations, and the practical construction adopted by the parties." *Potter*, 98 F.3d at 885 (citation omitted). "[W]here a treaty admits of two constructions, one restrictive of and the other favorable to the rights claimed under it, the latter is to be preferred." *Boehringer-Mannheim Diagnostics, Inc. v. Pan Am. World Airways, Inc.*, 737 F.2d 456, 458 (5th Cir. 1984) (citation omitted).

> We begin with the text of Article 33(2):
>
> In respect of damage resulting from the . . . injury of a passenger, an action may be brought before one of the courts . . . in the territory of a State Party in which at the time of the accident the passenger has his or her principal and permanent residence and to or from which the carrier operates services for the carriage of passengers by air, either on its own aircraft, or on another carrier's aircraft pursuant to a commercial agreement, and in which that carrier conducts its business of carriage of passengers by air from premises leased or owned by the carrier itself or by another carrier with which it has a commercial agreement.

Hardy contends that we ought to read "an action may be brought" to create personal jurisdiction in the plaintiff's home district over any defendant airline governed by the Montreal Convention. She marshals several pieces of context to support her claim.

First, she asserts that the State Department's Letter of Submittal to the Senate demonstrates the Senate's understanding that the Treaty makes Article 33(2)'s "fifth jurisdiction" "available even if the accident occurs on a passenger journey and air service that did not include a point in the country

of the passenger's principal and permanent residence, provided that the carrier had the contacts with that country required by this paragraph."[12] Second, the Senate Committee on Foreign Relations determined that "[u]nder Article 33, . . . U.S. courts will have jurisdiction in nearly all cases involving . . . personal injury to passengers who reside in the United States, thus eliminating the need for [them] to bring suit in foreign courts in order to obtain jurisdiction over air carriers."[13]

Hardy's interpretation of that ratification history also fits well with the stated goals of the replaced Warsaw Convention—"delegates voiced concerns about the possibility of major air crash cases being decided by courts of nations whose legal systems trailed developments in many or most other nations. "To avoid the 'prospect of a junglelike chaos,' the Convention set forth rules for universal application." *Boehringer-Mannheim Diagnostics*, 737 F.2d at 458 (quoting *Reed v. Wiser*, 555 F.2d 1079, 1092 (2d Cir. 1977)).

But that interpretation runs contrary to Supreme Court precedent interpreting the same language in other contexts. Article 33 permits that suits "must be brought, at the option of the plaintiff," in certain territories, Art. 33(1), or that they "may be brought" in the passenger's residential territory, Art. 33(2). That language precisely mirrors the language we regularly see in venue-selection and prescription clauses.[14] But, unfortunately for

---

[12] Montreal Convention, Letter of Submittal of Deputy Sec'y of State Strobe Talbott, 1999 WL 33292734, at *23 (discussing Art. 33(2)).

[13] S. Exec. Rep. 108-8, at 4, 108th Cong. (2003); *see also id.* at 21–22 (Deputy Assistant Secretary of State John R. Byerly explaining that the Convention allows an injured person to bring suit in "U.S. courts not only in cases against an airline that is domiciled or has its principal place of business here, or where the passenger's destination was the United States, or where the passenger made the contract for carriage in the United States, but in addition, where the passenger has his principal and permanent residence in all cases where the carrier serves the United States . . . and that carrier has a presence here.").

[14] *Compare* Montreal Convention art. 33 *with* 28 U.S.C. § 1391(b) *and BNSF*,

No. 23-30632

Hardy, a venue prescription *sans* authorization of service of process does not independently create personal jurisdiction.[15]  In other words, Article 33 does not create any jurisdiction.  Instead, it prescribes venue.[16]

Admittedly, this interpretation is novel.  As far as we are aware, no other court has expressly answered the question of personal jurisdiction under Article 33(2) by calling it a venue prescription.[17]  The Second Circuit is the only circuit to have definitively resolved the question, and it concluded that Article 33(2) affords only subject matter jurisdiction, not personal.  *See Nat'l Union*, 74 F.4th at 73–74.  So too have many district courts.[18]

---

581 U.S. at 408–09.

[15] *See BNSF*, 581 U.S. at 408–09; *see also Leroy v. Great W. United Corp.*, 443 U.S. 173 (1979).  There, the Supreme Court interpreted Section 27 of the 1934 Exchange Act. *See* 15 U.S.C. § 78aa.  It, like Montreal Convention Article 33, has a title that includes the word "Jurisdiction," and it explains both that "[a]ny criminal proceeding *may be brought* in the district wherein any act or transaction constituting the violation occurred" and that "[a]ny suit or action to enforce any liability or duty created by this chapter . . . *may be brought* in any such district . . . ." 15 U.S.C. § 78aa(a) (emphasis added).  Despite that, and even despite Section 27's discussion of service of process, the Court declared that "§ 27 of the 1934 [Exchange] Act does not provide a basis for personal jurisdiction . . . ." *Great W. United Corp.*, 443 U.S. at 180–81.

[16] The title of Article 33, "Jurisdiction," is likely the result of harmonizing different legal systems.  Regardless, the title of the section does not override the plain language of the Treaty. *See also supra* note 15.

[17] The Eleventh Circuit at least implicitly endorsed our interpretation of Article 33 in *Pierre-Louis v. Newvac Corp.*, 584 F.3d 1052 (11th Cir. 2009).  There, in a *forum non conveniens* dispute, the court reviewed Article 33 as a "jurisdictional provision which specifies in which fora . . . suits can be brought" and found that Article 33 did not prevent the application of *forum non conveniens*. *Id.* at 1056–58.

[18] *See, e.g.*, *Pesa v. SAS*, 2:19 Civ. 20415, 2021 WL 1660863, at *7 (D.N.J. Apr. 27, 2021); *Sampson v. Delta Air Lines, Inc.*, No. 2:12 Civ. 244, 2013 WL 6409865, at *1 (D. Utah Dec. 9, 2013); *Weinberg v. Grand Circle Travel, LCC*, 891 F. Supp. 2d 228, 237 (D. Mass. 2012); *Tucker v. British Airways PLC*, 2:16 Civ. 00618, 2017 WL 6389302, at *3 (W.D. Wash. Dec. 14, 2017); *Burton v. Air France-KLM*, No. 3:20-cv-1085, 2020 WL 7212566, at *7 (D. Or. Dec. 7, 2020); *Fisher v. Qantas Airways Ltd.*, 521 F. Supp. 3d 847, 855 (D. Ariz.

No. 23-30632

Still, we must perform our judicial duty and interpret the text. In that endeavor, *Duplantier v. United States*, 606 F.2d 654 (5th Cir. 1979), is instructive. There, we accepted the contention that 28 U.S.C. § 1391(e)(2)'s service-of-process language created personal jurisdiction over the federal Executive Branch. But we rejected an extension of that subsection's reach to the Judicial Branch because the judiciary contained no officers or agencies. *Id.* at 663–64 (adopting *Liberation News Serv. v. Eastland*, 426 F.2d 1379 (2d Cir. 1970) (declining to extend § 1391 to the Legislative Branch)). Without language providing for service on judicial branch members, we could not exercise personal jurisdiction over the judicial defendants. *Id.*[19]

We interpret the Montreal Convention in the same way. It provides a cause of action—Articles 17 and 18[20]—and it provides a venue selection clause—Article 33—but it does not provide for service, so it does not create

---

2021); *Bandurin v. Aeroflot Russian Airlines*, 19 CV 255, 2020 WL 362781, at *5 (N.D. Ill. Jan. 22, 2020); *Avalon Techs., Inc. v. EMO-Trans, Inc.*, Civ. A. No. 14-14731, 2015 WL 1952287, at *5 (E.D. Mich. Apr. 29, 2015).

That so many courts reach the same conclusion might suggest that the answer is well settled. But, other than the Second Circuit's ruling in *National Union* and some Second Circuit cases on the Warsaw Convention such as *Campbell v. Air Jamacia, Ltd.*, 863 F.2d 1, 1 (2d Cir. 1988) (per curiam), and *Smith v. Canadian Pac. Airways, Ltd.*, 452 F.2d 798, 800 (2d Cir. 1971) (addressing a motion to dismiss based on Rules 12(b)(1) and (3)), effectively every case offers some form of "other courts have said this is subject matter jurisdiction, not personal. *Q.E.D.*, we do the same." In other words, they forgo any kind of analysis. That reliance-without-analysis has no persuasive force, leaving us bound to perform an independent interpretation.

[19] *See also* FED. R. CIV. P. 4(k) (requiring service of a summons or waiver as a prerequisite to exercising jurisdiction); *In re McDonnell-Douglas Corp.*, 647 F.2d 515, 516 (5th Cir. Unit A May 1981) ("A court sitting in admiralty has personal jurisdiction over any defendant sued in personam whom the court can *reach with process*." (cleaned up)); *Omni Cap. Int'l, Ltd. v. Rudolf Wolff & Co.*, 484 U.S. 97, 104–06 (1987); *Fischer v. Fed. Express Corp.*, 42 F.4th 366, 385 (3d Cir. 2022), *cert. denied,* 143 S. Ct. 1001 (2023).

[20] *See Boehringer-Mannheim Diagnostics*, 737 F.2d at 458.

personal jurisdiction.[21]  Therefore, the district court correctly concluded that Article 33(2) did not create personal jurisdiction over SAS.

## B.

Hardy contends that, by virtue of reference to the Montreal Convention in its Contract of Carriage, SAS has waived its objections to personal jurisdiction in any court competent to hear a Montreal Convention claim. But an acknowledgment of subject matter jurisdiction or statutorily permitted venue does not waive personal jurisdiction.

Contrary to SAS's claims, Hardy did not forfeit her waiver position.[22] Still, we reject it.  Her position on appeal merely repackages her claim that the Montreal Convention creates personal jurisdiction.  But if the Convention does not create personal jurisdiction, then SAS's acknowledging that it is bound by the Convention does not waive any objections to personal

---

[21] We do not intend our interpretation to create any tension or conflict with other courts' interpretations, despite their differing language.  Instead, it appears most likely that those courts have merely imprecisely used the term "subject matter jurisdiction" to describe Article 33.  *See* 14D CHARLES ALAN WRIGHT & ARTHUR R. MILLER, FEDERAL PRACTICE & PROCEDURE § 3801 (4th ed.) ("WRIGHT & MILLER") ("Sometimes venue is confused with subject matter jurisdiction.  The two concepts are quite different.  The jurisdiction of the federal courts is a grant of authority to them by Congress." (cleaned up)).  Title 28 U.S.C. § 1331 specifically vests federal courts with subject matter jurisdiction over disputes arising out of treaties, so reading Article 33(2) to create subject matter jurisdiction also would create surplusage.  *Cf. R J Reynolds Tobacco Co. v. FDA*, 96 F.4th 863, 879 (5th Cir. 2024) (declining to read surplusage into text).  Therefore, we adopt a reading that gives Article 33 some other meaning, one that fits well with both the structure of the treaty and the intent of the signatory countries.  *See* S. Exec. Rep. 108-8 at 3, 4.

[22] SAS avers Hardy raised this Contract of Carriage contention for the first time on appeal, and, of course, matters not raised to the district court are waived on appeal. *Rollins v. Home Depot USA*, 8 F.4th 393, 397 (5th Cir. 2021).  But on review of the record, we see several locations where Hardy raised this exact issue.  True, she could have done so more clearly.  But she did so sufficiently to at least alert the district court to the issue.  Therefore, she has not forfeited her claim.

jurisdiction.

Made through an extremely oblique citation, Hardy appears primarily to assert that the Contract of Carriage's adoption of the Montreal Convention is akin to a forum selection clause—a "contractual waiver of personal-jurisdiction objections if litigation is commenced in the specified forum." *Weber v. PACT XPP Techs., AG*, 811 F.3d 758, 768 (5th Cir. 2016) (cleaned up). But a statutorily imposed forum prescription clause differs significantly from a contractual forum selection clause—one is imposed, the other is chosen—and a prescription does not create or imply personal jurisdiction. *Cf. BNSF*, 581 U.S. at 408.

SAS must comply with numerous federal regulations, including 14 C.F.R. §§ 203.3 and 203.4.[23] Those require SAS to "include the [Montreal Convention's] terms as part of its conditions of carriage." 14 C.F.R. § 203.4(b). Hardy asserts those regulations support her claim that SAS has consented to jurisdiction anywhere in the United States. But that cannot square with *BNSF*.

Just as a train company may be obligated to apply the Federal Employer's Liability Act in an employment-contract dispute, so too has SAS been obligated to adopt the Montreal Convention in its contract of carriage. Therefore, the waiver claim cannot stand. Just as the venue-prescription provision in *BNSF* did not confer personal jurisdiction, the statutory venue

---

[23] SAS appropriately points out that 14 C.F.R. § 203.4 addresses only the Montreal Agreement, which is distinct from the Montreal Convention. Even so, 14 C.F.R. § 203.3 requires the filing of signed counterparts to the "replacement" to the Montreal Agreement and is entitled "Filing Requirements for Adherence to Montreal Convention." Because we rule for SAS anyway, for the sake of this case we will assume that the subsequent section of the same regulation was similarly updated. *See also* 14 C.F.R. § 203.5; Montreal Convention Article 55(1)(e) (stating that "[t]his Convention shall prevail over any rules which apply to international carriage by air," including Montreal Protocol No. 4.).

prescriptions here, required to be adopted into contracts by law, do not create a waiver of personal jurisdiction.

Because the Montreal Convention does not create personal jurisdiction, we reject Hardy's claim. An acknowledgment of subject matter jurisdiction or of statutorily-permitted venue is not a waiver of personal jurisdiction. So SAS did not waive its ability to object by referencing the treaty in the Contract of Carriage.

## C.

Hardy submits that the district court had personal jurisdiction because SAS waived service and Hardy has met the other requirements of Rule 4(k)(2). We agree.

Federal courts' exercise of personal jurisdiction is governed by Federal Rule of Civil Procedure 4(k). This rule limits which federal court may hale a defendant into court, permitting to do so (1) a court that (A) sits in a state where the defendant is subject to the jurisdiction of that state's courts, (B) is within one hundred miles of where the joined defendant was served, or (C) is authorized by federal statute; or, (2) *any* federal court where the claim arises under federal law and (A) the defendant is not amenable to the jurisdiction of any state's courts but (B) where the exercise of personal jurisdiction by the federal courts would not violate the federal constitution and laws. FED. R. CIV. P. 4(k).[24]

---

[24] Rule 4(k)(2) "was enacted to fill an important gap in the jurisdiction of federal courts in cases arising under federal law": those cases where "'a defendant may have sufficient contacts with the United States as a whole to satisfy due process concerns," but "insufficient contacts with any single state," such that the defendant "would not be amenable to service by a federal court sitting in that state.'" *Adams v. Unione Mediterranea Di Sicurta*, 364 F.3d 646, 651 (5th Cir. 2004) (quoting *World Tanker Carriers Corp. v. MV Ya Mawlaya*, 99 F.3d 717, 721–22 (5th Cir. 1996)); *see also* 4B WRIGHT & MILLER § 1124.

Hardy contends that SAS falls into the second group—defendants that maintain sufficient ties to the United States but not to any one state—such that SAS's waiver of service suffices for Rule 4(k)(2) to apply. SAS responds by disputing that Hardy's claims arise from its contacts in the United States and asserting that Rule 4(k)(2) provides no independent basis for personal jurisdiction.

But SAS, like the district court, misconstrues the standard we apply: We do not analyze whether SAS had minimum contacts with the Eastern District of Louisiana; instead, we analyze its contacts with the United States writ large. Taking each prong of the Rule 4 analysis in turn, we conclude that the district court had personal jurisdiction over SAS.

### 1. *Whether the Claim Arises Under Federal Law.*

A claim that arises from a treaty is a federal question. 28 U.S.C. § 1331. Hardy asserts liability under the Montreal Convention, meaning that her claim arises under federal law.[25]

### 2. *Whether Hardy Served a Summons or SAS Waived Service.*

SAS waived service and does not dispute this prong of the Rule 4(k)(2) analysis. Thus, we continue to Rule 4(k)(2)(A) and (B).

### 3. *Whether SAS Is Subject to Jurisdiction in Any State's Courts of General Jurisdiction.*

Whether SAS may be subject to specific jurisdiction in New Jersey for

---

[25] *See World Tanker*, 99 F.3d at 720–22 ("The use of the word 'any' to qualify 'federal law' suggests that the Advisory Committee intended Rule 4(k)(2) to reach not just federal questions arising under § 1331 but all claims arising under substantive federal law."); *see also Potter*, 98 F.3d at 883–85 & n.4 (interpreting the Montreal Convention's predecessor, the Warsaw Convention, and acknowledging such interpretation raised a federal question); *see also* 13D WRIGHT & MILLER § 3563 & nn.57–61.

this case is uncertain. But it is ultimately irrelevant to our analysis because SAS has not claimed so in court.

In *Adams*, this circuit joined the Seventh in adopting a presumption that, "so long as a defendant does not concede to jurisdiction in another state, a court may use 4(k)(2) to confer jurisdiction." 364 F.3d at 651 (citing *ISI Int'l, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001)). Applied for the sake of judicial economy, this presumption applies to pretermit any "piecemeal analysis of the existence *vel non* of jurisdiction in all fifty states." *Id.*[26]

SAS has been on notice since, at least, Hardy's response to the motion to dismiss that, to rebut the application of Rule 4(k)(2), it bears the obligation to identify a jurisdiction within the U.S. where it is subject to personal jurisdiction. Yet it has declined to name any. Considering that SAS has no employees or property in the United States, no jurisdiction obviously has general jurisdiction over it. Further, like the defendant in *Adams*, SAS "has generally challenged the existence of minimum contacts with the United States as a whole," *id.*, by contending that it is not at home in the United States and that Hardy's claims do not arise from SAS's contacts in the U.S. at all. Therefore, Rule 4(k)(2)(A) does not bar a finding of personal jurisdiction.

### 4. Whether Exercising Jurisdiction Is Consistent with the United States Constitution and Laws.

Finally, we reach the key question: Whether the exercise of jurisdiction over SAS by the Eastern District of Louisiana comports with the federal Constitution and laws.

---

[26] *See also Nagravision SA v. Gotech Int'l Tech. Ltd.*, 882 F.3d 494, 499 (5th Cir. 2018).

No. 23-30632

This is the only prong of the Rule 4(k) analysis that SAS contests, asserting both that it is not "at home" in Louisiana and that Hardy's claims do not sufficiently arise out of SAS's contacts with Louisiana to afford specific personal jurisdiction. SAS, like the district court, is correct that it is not "at home" in the United States, nor in Louisiana. But SAS copies the district court's error, analyzing the specific-personal-jurisdiction prong for connection with Louisiana, instead of connection with the United States writ large. Because SAS has sufficient minimum contacts with the U.S. so as not to offend the traditional notions of fair play and substantial justice, the exercise of specific personal by *a* federal district court is constitutionally permissible.

## Rule 4(k)(2)(B)

"Rule 4(k)(2) is a procedural rule governing the territorial limits of service. The text is expressly subservient to the constitutional limits of due process." *Douglass v. Nippon Yusen Kabushiki Kaisha*, 46 F.4th 226, 233 (5th Cir. 2022) (en banc), *cert. denied*, 143 S. Ct. 1021 (2023). To determine the constitutional limits of personal jurisdiction for federal claims, we analyze their comportment with the due process clause of the Fifth Amendment, not the Fourteenth. *Id.* at 231. But the process of analysis should be familiar— "the Fifth Amendment due process test for personal jurisdiction requires the same 'minimum contacts' with the United States as the Fourteenth Amendment requires with a state." *Douglass*, 46 F.4th at 235.[27]

Hardy does not assert that SAS is subject to the general personal juris-

---

[27] *See also* 46 F.5th at 238 & n.19 ("Every Fifth Circuit decision addressing the scope of contacts required for personal jurisdiction under the Fifth Amendment has applied the then-existing Fourteenth Amendment framework." (footnote collecting cases)). Our practice also comports with most other circuits. *See id.* at 238 n.24 (collecting cases from the Second, Sixth, Seventh, Eleventh, Federal, and D.C. Circuits); 4 WRIGHT & MILLER § 1069.1, nn.10, 31 (collecting cases).

diction of the district court. A wise choice, as the court correctly concluded that *Douglass* forecloses such a claim.[28] Thus, our only question is whether the court erred by finding that it could not exercise specific personal jurisdiction over SAS in connection with Hardy's claim.

> "This circuit applies a three-step analysis for the specific jurisdiction inquiry: (1) whether the defendant has minimum contacts with the forum state, i.e., whether it purposely directed its activities toward the forum state or purposefully availed itself of the privileges of conducting activities there; (2) whether the plaintiff's cause of action arises out of or results from the defendant's forum-related contacts; and (3) whether the exercise of personal jurisdiction is fair and reasonable." If a plaintiff establishes the first two prongs, the burden shifts to the defendant to show that the exercise of personal jurisdiction would be unfair or unreasonable.[29]

<u>Minimum Contacts and Purposeful Availment</u>

As every first-year law student learns, personal jurisdiction depends on whether the defendant "ha[s] certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (internal quotations and citations omitted). Those minimum contacts must show "some act by which the defendant purposefully avail[ed] itself of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws."[30] "For federal claims filed

---

[28] *See* 46 F.4th at 234–35, 238 (expressly limiting the extent of its analysis to general jurisdiction and distinguishing those cases that apply 4(k)(2) in specific jurisdiction contexts); *see also Quick Techs., Inc. v. Sage Group PLC*, 313 F.3d 338, 343–45 (5th Cir. 2002).

[29] *E. Concrete Materials*, 948 F.3d at 296 (quoting and citing *Monkton*, 768 F.3d at 433).

[30] *Hanson v. Denckla*, 357 U.S. 235, 253 (1958); *see also Ford Motor Co. v. Montana*

in federal courts, of course, the relevant minimum contacts are those with the entire United States, not a forum state."[31]

SAS flies into/out of seven different metro areas in the U.S. It also advertises to American buyers, participates in the Star Alliance with United Airlines, owns and operates a subsidiary in the United States, sells tickets online across the U.S., and is regulated by the FAA.[32]

Combined, these contacts more than meet the minimum-contacts test and show that SAS has purposefully availed itself of the protections of U.S. laws.[33]

---

*Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021) (first citing *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 774 (1984); and then citing *Walden v. Fiore*, 571 U.S. 277, 285 (2014)).

[31] *Douglass*, 46 F.4th at 242; *see also Adams*, 364 F.3d at 651 (citing *World Tanker*, 99 F.3d at 723); *DISH Network, L.L.C. v. Elahmad*, No. 23-20180, 2024 WL 1008585, at *2 (5th Cir. Mar. 8, 2024) (per curiam) (unpublished).

[32] *See* 49 U.S.C. §§ 41101, 41301–02; *cf. Ford*, 592 U.S. at 365 ("Small wonder that Ford has here conceded 'purposeful availment' of the two States' markets. By every means imaginable—among them, billboards, TV and radio spots, print ads, and direct mail—Ford urges Montanans and Minnesotans to buy its vehicles." (citation omitted)).

We do not suggest that selling tickets online would alone suffice for specific personal jurisdiction, nor would merely owning and operating a subsidiary or participating in an airline alliance. But we may consider the relevance of those factors, particularly in conjunction with SAS's other actions. *Cf. E. Concrete Materials*, 948 F.3d at 296–97. We similarly discount the personal-jurisdictional implications of SAS's participation in a multi-district class action as a plaintiff and its petitioning for bankruptcy in U.S. courts. *See Shambaugh & Son, L.P. v. Steadfast Ins. Co.*, 91 F.4th 364, 374 (5th Cir. 2024) ("The mere fact that a defendant participated in state court lawsuits in the putative forum, without more, cannot meet this court's standard for specific personal jurisdiction." (citation omitted)).

[33] *Cf. Kim v. Korean Air Lines Co.*, 513 F. Supp. 3d 462, 473–74 (D.N.J. 2021) (finding sufficient minimum contacts and a causal relationship between New York and an injury sustained midflight out of JFK Airport).

No. 23-30632

<u>Arises Out of or Results From</u>

The next prong of the test asks whether Hardy's claims arise out of or result from SAS's minimum contacts. Contrary to the district court's rulings, they do.

"[S]pecific jurisdiction is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction."[34] In other words, Hardy must provide a *prima facie* showing of a connection between SAS's actions in the United States and her injury.

In *Ford*, the Supreme Court described the standard as having two prongs. First, we look to causation. But, if we do not find causation, we may also "contemplate[] that some relationships will support jurisdiction without a causal showing."[35]

The district court focused solely on SAS's selling the ticket to Hardy in Mandeville. That, it determined, showed insufficient causation of her injury, nor was it the type of relationship that would otherwise support jurisdiction. But that narrow focus was improper. Hardy's claim arises out of the ticket sale, yes, but it also stems from SAS's advertising in the United States and its operation of a flight out of Newark. That her injury occurred during the flight's disembarkation in Oslo does not resolve the matter. Instead, we must review those facts as pieces of a whole. Put together, we see that SAS's

---

[34] *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011); *see also id.* at 923–24 ("Adjudicatory authority is 'specific' when the suit 'arises out of or relates to the defendant's contacts with the forum.'" (quoting *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n.8 (1984)) (alterations accepted)).

[35] *Ford*, 592 U.S. at 362; *see id.* ("In the sphere of specific jurisdiction, the phrase 'relate to' incorporates real limits, as it must to adequately protect defendants foreign to a forum. But again, we have never framed the specific jurisdiction inquiry as always requiring proof of causation—*i.e.*, proof that the plaintiff's claim came about because of the defendant's in-state conduct.").

purposeful contacts in the U.S. combined to create an unbroken causal chain that ends with Hardy's injury.

In other words, the district court erred because it considered only the contacts with the Eastern District of Louisiana, but it should have considered whether the claim arose out of SAS's intentional contacts with the United States as a whole.[36] The connection between Hardy's injury and SAS's contacts with Louisiana may have been overly attenuated, but the connection to its contacts with the U.S. was not. Thus, Hardy's injury "arises out of" SAS's minimum contacts with the United States.

### Fairness and Reasonableness

Finally, we turn to the fairness and reasonableness prong of the analysis. As with the "arises out of or results from" prong, the district court ruled that the connection between Hardy's claims and SAS's contacts was "too attenuated." This too was error.

Now that we have determined that Hardy has met her *prima facie* burden on the first two factors, SAS must prove the unfairness of the exercise of personal jurisdiction. *E. Concrete Materials*, 948 F.3d at 296, 299. But SAS has made no such showing—nor even attempted to make one. Even if the burden had not shifted to SAS, though, the exercise of jurisdiction would be reasonable and fair.

*International Shoe* derives its limitation of personal jurisdiction to those forums that would not offend the traditional notions of fair play and substantial justice from the Due Process Clause's protection of individual liberty. *Douglass*, 46 F.4th at 236. We weigh five factors to determine

---

[36] *Cf. Walden*, 571 U.S. at 284 (holding that, for specific jurisdiction, "the relationship must arise out of contacts that the 'defendant [it]*self*' creates with the forum State" (quoting *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985))).

whether such an exercise is fair and just: "(1) the burden on the nonresident defendant, (2) the forum state's interests, (3) the plaintiff's interest in securing relief, (4) the interest of the interstate judicial system in the efficient administration of justice, and (5) the shared interest of the several states in furthering fundamental social policies."[37]

The first factor is the most important, *E. Concrete Materials*, 948 F.3d at 299 (citation omitted), and the burden on SAS is weighty: It is based in the Scandinavian countries, not the United States. Also, Hardy's injury occurred in Norway, and many of the relevant witnesses and evidence will be located there. At the same time, though, SAS regularly litigates in the U.S., including having declared bankruptcy here. Further, that SAS is an international airline suggests it may be better able than many other defendants to mitigate the burden of litigating this case in the United States.[38]

But the second factor counters the first here. The United States has a weighty interest in the dispute because the plaintiff is an injured American citizen and resident, and her claim arises under a treaty to which the U.S. is a signatory. Further, as discussed earlier, her flight took off from the United States.

The third factor, the plaintiff's interest, also weighs heavily toward maintaining the case in the United States: Hardy received her initial medical treatment in Norway, but she received follow-up treatment here, and she remains plagued by her injury. Moreover, she lives in and had her life-care

---

[37] *E. Concrete Materials*, 948 F.3d at 298 (quoting *Luv N' care, Ltd. v. Insta-Mix, Inc.*, 438 F.3d 465, 473 (5th Cir. 2006)); *see also Douglass*, 46 F.4th at 236 (first quoting *World-Wide Volkswagen v. Woodson*, 444 U.S. 286, 292 (1980); and then quoting *Bristol-Myers Squibb Co. v. Super. Ct. of Cal.*, 137 S. Ct. 1773, 1781 (2017)).

[38] *See Nuovo Pignone, SpA v. STORMAN ASIA M/V*, 310 F.3d 374, 382 (5th Cir. 2002), *abrogated on other grounds by Water Splash, Inc. v. Menon*, 581 U.S. 271 (2017).

plan prepared in the U.S. In other words, Hardy has a vested interest in being able to pursue her claim in the forum she has chosen, one where she will not be unduly inconvenienced if she wishes to attend any of the proceedings and where some of her experts may be more readily available.

The fourth and the fifth factors are much less easily weighed in this context.[39] American courts handle personal injury cases every day, so we can presume our courts will be efficient and competent. But neither party has submitted evidence as to the efficiency or competence of the Norwegian courts. Similarly, the impact on social policies of the United States and Norway, both being signatories to the Montreal Convention, is unclear. Additionally, as mentioned earlier, most of the evidence and many witnesses are in Norway. In other words, these factors could tilt either way.[40]

Despite that opacity on the fourth and fifth factors, the second and the third factors lean heavily in favor of a finding of fairness and reasonableness, outweighing the "most important" first factor.[41] Moreover, SAS bears the burden of rebutting the *prima facie* case the first two prongs establish and has not done so. Therefore, the district court had specific personal jurisdiction over SAS.

---

[39] One district court has even called into question whether "the last two factors . . . logically appear to pertain to an action where the relevant forum is the United States rather than any one particular state." *Cambria Cnty. Employees' Ret. Sys. v. Venator Materials PLC*, 532 F. Supp. 3d 440, 448 (S.D. Tex. 2021) (citing *Am. Dredging Co. v Miller*, 510 U.S. 443, 447–49 & n.2 (1994)). Because we can estimate the balance of the factors regardless of these two, and SAS has not even attempted to meet its burden, we take no position on the pertinence of the fourth and fifth factors. Instead, we note that the question remains open and that another panel, dealing with a case that more squarely presents the issue, may need to resolve it.

[40] *See also Kim*, 513 F. Supp. 3d at 475–76 (weighing the same factors).

[41] *Cf. Burger King*, 471 U.S. at 475–76 (discussing purposeful availment).

No. 23-30632

\*　\*　\*　\*　\*

We sum up our ruling as follows:

The Montreal Convention's Article 33 may be entitled "Jurisdiction," but it is only a venue prescription. We do not stretch SAS's incorporation of the Convention in its contract of carriage into a waiver of personal jurisdiction in countless fora because SAS only did as it was required by law and the Treaty. *See* Montreal Convention art. 3(5). The district court properly rejected Hardy's Montreal Convention claim.

The district court erred in rejecting Hardy's Rule 4(k)(2) claim. It incorrectly analyzed SAS's contacts with the state of Louisiana, where it should have analyzed SAS's contacts with the United States writ large. SAS has sufficient minimum contacts with the United States that the exercise of personal jurisdiction under Federal Rule of Civil Procedure 4(k)(2) is appropriate.

The judgment of dismissal is REVERSED and REMANDED. We place no limitation on the matters that the district court might address on remand, and we indicate no view on what rulings it should make.